STATE ex rel. E. L. LARSON v. EVEN HALVERSON and Others.[1]

November 27, 1914.

Nos. 18,802—(65).

**Care of infant — father's right.**
> Evidence considered and *held* to show that the best interests of a minor child of the age of about five years, and her general welfare, will be best

[1] Reported in 149 N. W. 664.

---

Note.—As to the denial of custody of child to parent for its well-being, see note in 41 L.R.A.(N.S.) 564.

served and protected by remaining with her grandparents where she has been since her birth and the subsequent death of her mother, and that the natural right of the father to her custody and control must yield thereto.

Upon the relation of E. L. Larson, the district court for Houston county issued its writ of *habeas corpus* directed to Even Halverson, Anna Halverson and Sophia Halverson. The matter was heard by Kingsley, J., who ordered judgment awarding the custody of relator's minor child to respondents. From that order relator appealed. Affirmed.

*Catherwood & Nicholsen,* for relator.

*Gray & Thompson* and *Duxbury & Duxbury,* for respondent.

BROWN, C. J.

Relator, E. L. Larson, and Julia Halverson, were duly married to each other some time in the year 1907, and thereafter continued to reside together as husband and wife until the death of the wife in December, 1909. A daughter was born to them in April, 1909, who, since the death of the mother, has been in the custody and care of respondents, the mother and father and sister of the deceased. The child is now about five years of age. She was so committed to the custody of her grandparents and her aunt under arrangements made with them by relator immediately following the death of the mother, and when the child was only a few months old. The home of the grandparents during all this time was and still is on a farm in Houston county, this state, while relator resided, from a time prior to the death of his wife and since, at St. Paul, and in the employ of the street railway company. Relator remarried in November, 1912. Subsequent to this marriage this proceeding was instituted to gain possession and control of the child, respondents having refused to surrender her on the demand of the father. The court below, after hearing and duly considering the evidence presented, ordered and directed the entry of judgment awarding the custody of the child to respondents until the further order of the court. Judgment was so entered and relator appealed.

It is thoroughly settled law that the parent's right to the care,

custody and control of his minor children is paramount to all other considerations, save the best interests of the child, and his ability and fitness being established the custody and control follow as a matter of course. But in all controversies involving the custody of minor children the welfare and best interests of the child are the chief consideration and prevail over the natural right of the parent. This is too well settled to require the citation of authorities. We apply the law as thus stated to the case at bar. The evidence before us discloses the ability and fitness of the father, from a pecuniary point of view, to support his daughter, but whether her interests and welfare, in view of her physical condition, will justify taking her from her present home and surroundings, is so clouded in doubt and uncertainty, with the force of the evidence against the change, that we conclude that she should for the present, and until the further order of the court below, remain with her grandparents and her aunt, where she has been since her birth, and from whom she has received the most tender and affectionate care.

It appears, as already stated, that relator remarried in November, 1912, and resides with his present wife in rented apartments in St. Paul. In addition to the care of the home and the discharge of her household duties, the present wife also conducts a small grocery store in the vicinity of the place of their residence, and this necessarily occupies a considerable portion of her time during the day. Relator is engaged as car conductor for the street railway company and he is away from home during the working hours. The child, according to the testimony of the relators and also physicians called to treat her, has not enjoyed perfect health since her birth. Her mother was afflicted with tuberculosis and died of that ailment a few months after the birth of the child. The child, a year or two ago, was taken with a serious eye trouble which the physicians attributed to the tubercular condition of the mother. This trouble is likely to recur and for this reason, coupled with her physical condition, attributable to the same cause, the physicians testified that it would be detrimental to her health and welfare to remove the child from her present sur-

roundings and take her to either St. Paul or Minneapolis. It is their opinion that the child requires an outdoor life, and among congenial surroundings, and that the home life on respondents' farm is best suited to the improvement, now under way, of her general health and condition. The child will receive tender care and attention at the hands of its grandparents and aunt, the respondents. And though a stepmother might extend the same care and attention to her stepchild, and no doubt relator's present wife would endeavor to do so, we are not justified in ignoring the evidence of the physicians above referred to, or in concluding that their judgment of what is best for the child is not sound. This situation differentiates the case from any of those where the natural right of the father has been given effect, for it centers around and aims at the welfare of the child, which is paramount to the natural paternal right.

Judgment affirmed.