## STATE EX REL. ANTON FOSSEN v. OLIE HITMAN AND ANOTHER.[1]

October 2, 1925.

No. 24,980.

**Custody of young child awarded to parents.**

The evidence warrants the conclusion that relator and his wife, the parents of the child Irene, temporarily placed in the custody of respondents, are morally and financially fit and able to properly rear and educate their child and should be awarded custody of the same. The evidence does not sustain the claim that relator gave the child to respondents. And, even if it had, the right to reclaim the same under the facts herein would not be barred.

See Habeas Corpus, 29 C. J. p. 167, § 191.

[1]Reported in 205 N. W. 267.

Upon the relation of Anton Fossen the district court for Pope county granted its writ of habeas corpus directed to Olie Hitman and another. The matter was heard by Hoff, court commissioner, from whose order, awarding the custody of Irene Fossen to relator, respondents appealed. Affirmed.

*Gunderson & Leach,* for appellants.

*Ofsthun & Selnes* and *Frank J. Zima,* for respondent.

HOLT, J.

In a habeas corpus proceeding relator was awarded the custody of his five-year-old child, Irene. Respondents appealed to this court where the case was by stipulation submitted upon the record taken before the court commissioner who issued the writ, and upon certain depositions and affidavits filed here.

The child when a few weeks old came into the custody of respondents Hitman under these circumstances: Olie Hitman and Inga Hitman are husband and wife, and were married several years before Irene was born. They are farmers living in Pope county, Minnesota. Olie received the farm consisting of 80 acres, 25 of which are under cultivation, from his father. Photographs of the buildings thereon show a neat and attractive farm home and surroundings. Olie is 39 and Inga 29 years old. No children have been born to them. Inga is the sister of relator.

The relator, Anton Fossen, is 35 years old and Julia his wife is about the same age. Shortly before the birth of Irene, Julia became mentally deranged. Physicians concluded the cause to be her pregnancy. She could not care for her infant in that condition and was taken first to a private hospital and then committed to the insane asylum at Jamestown, North Dakota, in which state she and her husband have resided as farm renters since their marriage about 15 years ago. The parties had then an older child about 9 years of age. In this predicament relator wrote his sister Inga to help him. She came, took care of the child and helped as cook for his threshing crew a couple of weeks, and then took Irene to her home in Minnesota where she has since remained. Inga claims that Anton gave

her the child. This he strenuously denies. Julia Fossen returned to her home in September, 1922, after an absence of one year and eleven months. The testimony is convincing that since her return there has been no manifestation of mental derangement. There is no medical testimony that her former trouble is likely to recur. No one in her family has been afflicted with insanity. As soon as she returned both she and relator began to ask the Hitmans for the child. Most of their letters remained unanswered. Each made a trip to the Hitman home to get the child, but were refused. Finally this proceeding was begun.

The law is well settled in this state that the natural parents have the first right to the care and custody of the child, unless the best interests of the child require it to be given into the hands of some one else. Best interests in this sense do not mean that the child may have an easier or more luxurious life and greater prospect of inheritance with others than with the natural parents, but rather, if in the parents there is such a lack of moral stamina or ability to gain a livelihood, that it is made to appear that the child must go without proper education and moral training or suffer want under their care and custody, then the best interests of the child are at stake. Mere poverty of the parents is seldom, if ever, a sufficient ground for depriving them of the natural right to the custody of their child, to say nothing of the statutory right (G. S. 1923, § 8933). Such moral deliquency or inability to furnish the child with needed care as in State ex rel. v. Anderson, 89 Minn. 198, 94 N. W. 681, and State ex rel. v. Halverson, 127 Minn. 387, 149 N. W. 664, induced the court to temporarily withhold the right to the custody of the child from the parent, is not present in the instant case. The rights of a parent are well stated and limited in State ex rel. v. Martin, 95 Minn. 121, 103 N. W. 888; State ex rel. v. Armstrong, 141 Minn. 47, 169 N. W. 249; State ex rel. v. Pelowski, 145 Minn. 383, 177 N. W. 627.

In this case the evidence is quite clear that there is slight difference, if any, between the financial standing and ability of the Fossens and Hitmans to provide for the needs of a family. Anton Fos-

sen went to North Dakota when 16 years old. It is true he does not own a farm or home, but has always been a renter of farms. However, with the efforts of himself and wife, he has operated large farms upon which were suitable dwellings for his use. He is the owner of 11 horses, 17 cattle, the necessary farm machinery, including a half interest in a threshing outfit, furniture and household goods to furnish a home nicely. He has no encumbrance thereon, and estimates the value at $5,000. The Hitmans estimate their possessions worth some two or three thousand dollars more, but it is to be noted that Mr. Hitman received the farm as a gift, has had no extraordinary expenses and is 4 years older. Either family is able to provide for the physical wants of Irene, and no doubt willing to give her the ordinary education farmers' daughters receive.

Morally and intellectually the evidence places the families on the same level, in our opinion. They belong to the same religious denomination. They are no doubt about equally neat, industrious, honest and upright. The evidence is overwhelming that in the respective communities where they reside their reputation as moral law-abiding citizens is of the best. The feeble attack upon Anton Fossen's habits as to drink and conduct toward women when his wife was away and upon Mrs. Hitman's conduct toward men when away from her husband is not worthy of notice. In this bitter struggle for the possession of the child near relatives have taken sides, and things are charged which, we doubt not, would never have caused a whisper of suspicion or fault among them under calmer moments. The older child of Fossens, now 14 years old, has always remained with her father, even when the mother was away. There is not a hint of improper care or training for that child. There is no reason to think that Irene will not fare as well in the Fossen household.

We can appreciate how the affection of the Hitmans have centered in this little girl. Their childless marriage must accentuate their desire to retain her. But we can find no legal reason for denying the natural parents the rights to the custody they demand.

We do not find that there was any agreement to give her to the Hitmans by the father. And, even if there had been, it would not have been valid. State ex rel. v. Anderson, supra. It is not claimed that the mother ever expressed any consent to their having the child, and surely no contract of a gift can be claimed unless both parents have joined therein.

Let judgment be entered awarding the custody of the child Irene to relator.