## STATE EX REL. ARTHUR J. HEINEMANN v. JAMES AND RUTH MILLER.[1]

October 14, 1932.

No. 29,027.

Mark & Barron, for appellant (relator below).
Roger L. Dell, for respondents.

[1]Reported in 244 N. W. 685.

LORING, J.

The relator sued out this writ of habeas corpus to obtain the custody of Patricia Heinemann, his minor daughter, born December 5, 1929, and whose mother died December 8, 1929. The district court found in favor of the respondents, and the case is here on appeal for trial de novo. By stipulation it is tried here on the record made below.

The parents of Patricia had never established a home after their marriage but continued to reside with their respective parents. Patricia was born in a hospital at Brainerd, was a seven-months baby, and required extremely careful attention. A few days after her birth, the respondents took her to their home at Wadena and have ever since cared for her in an admittedly excellent manner. Due to her premature birth, it was necessary to keep her warm by means of many hot water bottles in her crib for the first two months, and it was also necessary to feed her twice during the night and otherwise give her extraordinary attention. This was done by the respondent Ruth Miller, who has also given her personal attention through three severe illnesses.

There is some dispute in the testimony in regard to the arrangement under which the child was given to the Millers. At that time neither of its grandmothers was in such health as to justify taking the child. Accordingly, it was arranged that the Millers, who had lost their only child and who could not have another, should take the baby. They claimed that there was no promise at that time to pay anything for the baby's keep but that later the relator voluntarily contributed $25 a month for three months, and paid $15 on a $60 doctor's bill in one of the later illnesses. The relator claims that the child was taken under an understanding that he should pay for its keep. He has not done so other than as above recited, and has contributed nothing in the way of clothing or other necessities for the child, with the possible exception of a few presents at her birthday or at Christmas. He is now engaged to be married, and there is possibly some reluctance upon the part of his fiancee to have the child by the former wife living in another family in the same town where she and the relator propose to live.

The relator does not intend to take the child into the home which he proposes to establish at Wadena but wants to place it with his parents at the village of Verndale, some seven or eight miles distant. There is no question but that the proposed home at Verndale is wholly adequate and that the child's grandparents are in a financial position to care for the child; but there is some question as to the health of the paternal grandmother. She has been troubled with high blood-pressure, which is now much improved. Her doctor says that she would be capable of taking care of the child, but admits frankly that, other things being equal, he would recommend the younger woman, Mrs. Ruth Miller, as custodian. Mrs. Miller is in her thirties.

In the record some attack was attempted on the respondent James Miller's character in connection with the business transacted by him at his garage, but the relator frankly admits that the Miller home is adequate and that Ruth Miller has been giving the child excellent motherly attention. It appears that the child is of a nervous, timid disposition, much afraid of strangers, and is much attached to the Millers. There seems to be no question about the adequacy of the means of the Millers to support, educate, and care for Patricia. Normally a parent has the right to the custody of a child, and the burden is on anyone contesting that right to show the parental unfitness; but that parental right must yield to the best interests of the child, which are paramount to it. State ex rel. Larson v. Halverson, 127 Minn. 387, 390, 149 N. W. 664, and cases cited in State ex rel. Herniman v. Markson, 187 Minn. 176, 244 N. W. 687. The relator does not propose to take his child into his home which he expects to establish and into which doubtless children of the new marriage will be born, but expects to place her with his own parents, who are between 50 and 60 years of age, and who, if still living, will be 70 years old or more at the time when Patricia will most need the guidance and counsel of alert and loving parents. The father's record for love and affection and attention to his child is not an encouraging one, while that of the respondents assures the child of loving attention, good counsel, and guidance throughout her childhood and youth. The age of the respondents and the fact

that they will have no other children are factors that cannot be ignored. They can be expected to be able to look after Patricia's welfare long after the paternal grandparents may be expected to. For the present there is a distinct advantage to Patricia in being mothered by a young woman. The doctor concedes that. There is no expectation that with the respondents there will be any conflict of interest or complications due to other children or grandchildren. We therefore reach the same conclusion as that of the trial court.

Writ discharged.