## STATE EX REL. HELMER OLSON AND ANOTHER v. AXEL SORENSON AND OTHERS.[1]

July 12, 1940.

No. 32,502.

[1]Reported in 293 N. W. 241.

D. J. Shama, for appellants (respondents below).
Ira C. Peterson, Jr., for respondents (relators below).

GALLAGHER, CHIEF JUSTICE.

On the relation of Helmer and Pearl Olson a writ of *habeas corpus* issued out of the district court of Kittson county to determine custody of their nine-year-old daughter, Beverly. The writ was directed to the maternal grandparents of the child and three of their children residing in their home. The district court awarded custody to relators. Respondents appealed to this court, where, after reference to the Honorable Levi M. Hall, one of the judges of the district court of Hennepin county, for the purpose of taking additional testimony, the case was tried *de novo*.

The subject of this proceeding has made her home with her grandparents, Axel and Amelia Sorenson, in the village of Kennedy, Kittson county, since birth, with the exception of a few months during the past year when she lived in Minneapolis with an aunt and there attended school. No serious claim is made by relators that she has not been well provided for or that her present home is not fit and suitable. It is their claim, however, that they, as parents, have first right to her custody and that they are now capable of providing a home for their daughter equally as suitable as the one furnished by the grandparents. The question for our determination is: Which arrangement will best serve the child's interests?

The principles of law involved are so well settled that they hardly bear repetition. All other things being equal, the

natural parents have the paramount right to the care and custody of a child. State ex rel. Anderson v. Anderson, 89 Minn. 198, 94 N. W. 681; State ex rel. Lehman v. Martin, 95 Minn. 121, 103 N. W. 888; State ex rel. Renning v. Armstrong, 141 Minn. 47, 169 N. W. 249; State ex rel. Machgan v. Pelowski, 145 Minn. 383, 177 N. W. 627; State ex rel. Fossen v. Hitman, 164 Minn. 373, 205 N. W. 267; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927. That right is not absolute, however, and must yield to the child's welfare. If its best interests will be served by granting custody to someone else that will be done. Gauthier v. Walter, 110 Minn. 103, 124 N. W. 634; State ex rel. Larson v. Halverson, 127 Minn. 387, 149 N. W. 664; State ex rel. Neib v. Krueger, 143 Minn. 149, 173 N. W. 414; State ex rel. Henning v. Gundvaldson, 169 Minn. 335, 211 N. W. 310; State ex rel. Lund v. Anderson, 175 Minn. 518, 221 N. W. 868; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927.

The presumption is that parents are fit and proper persons to have the care and custody of their child, and the burden is upon those who claim the contrary to overcome that presumption by satisfactory proof. State ex rel. Lehman v. Martin, 95 Minn. 121, 103 N. W. 888. Under appropriate conditions the child's wishes may be taken into consideration in determining the custody. State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927. Because of Beverly's age and her lack of opportunity to become attached to her parents, we do not believe this to be a case for the application of that test.

In order to determine what will be to the best interest of the child, whose rights are superior to those of all others, we have scrutinized the record with particular care. It discloses in substance that the Sorensons live in Kennedy, a village of about 400 inhabitants. They own a home consisting of about five acres. They keep a cow and raise sufficient vegetables to supply the family, composed of Axel, the

father, age 59; Amelia, the mother, 56; Alex, 32; Emery, 17; Veryle, 13; and Ann Joyce, 15. The other children of a family of 13 have all left home. Considering their means, the parents have done very well by the children. One son is a doctor in Sallisaw, Oklahoma, where the father is at present taking treatments for an ailment which may be cancer. The mother is there helping to care for him. A daughter is an osteopath, another daughter a graduate of Moorhead State Teachers College. Alex, one of the sons at home, is employed on WPA. Emery, the other son, works part time in a grocery store. Veryle and Ann attend high school in Kennedy. The family has received some aid, but under existing conditions that is not to their discredit. Taking everything into consideration, the Sorensons have apparently provided well for their own family and have, up to this time, furnished a suitable home for Beverly. Perhaps they can and will, if given the opportunity, continue to do so, although with the father ill and his recovery uncertain, changes in the home may become necessary. The viewpoint of the Sorensons is not hard to understand. They have raised the child from infancy and no doubt have become attached to her. The attachment is perhaps reciprocal. They feel that they are entitled to keep her and desire to do so. Earnest consideration has been given to their claims.

The Olsons, Helmer and Pearl, did not get away to a very auspicious start at their marriage. Reference to the reasons would not aid this opinion. The parents of Mrs. Olson were justly provoked. They brought their daughter home before the birth of Beverly, and she remained there for some time. Later she found work in Minneapolis, where she has since lived with rather intermittent contact with the family in Kennedy.

After Pearl returned to her parents' home, just prior to the birth of Beverly, Helmer made a few unsuccessful attempts to see her and then dropped out of the picture until sometime in 1935, when he and Pearl met in Minne-

apolis. They have been living together since 1937. For the past 18 months they have resided at 607 East Fifteenth street, Minneapolis. They occupy a two-story house which has been made into apartments. Their landlady and other occupants of the apartment testified in their behalf and spoke well of them. Mrs. Whitely, the landlady, testified that "they are quiet, pay their rent, keep the place clean, and mostly early to bed." Pearl's sister Ruth visited their home and found it to be neat and clean. The Olsons, like the Sorensons, attend church. There are adequate schools located in the neighborhood in which they live. Helmer is a member in good standing in a Minneapolis labor union. His employment is quite steady. His income, while not large, is sufficient to provide adequately for Pearl and Beverly. He has no savings account and does not carry any life insurance but appears to have kept his obligations paid. While not adverse to taking an occasional drink, both Mr. and Mrs. Olson appear to be of temperate habits.

There is no scale by which we can measure with exactness the relative merits of the two homes or decide with absolute definiteness the question as to which home will be best for the child. What appears to be best today may not be so in six months or even in six weeks. It does seem to us, however, that for the present the interests of the child will be as well served by giving the care and custody to the parents as by leaving her with the grandparents. In any event, the record discloses nothing from which we could find at this time, or for some time past, that the parents are not able to furnish a suitable home for their child. Unless they are to be deprived for all time of the love and affection of their child and of the opportunity to give to her their love and affection, they should be given that chance now. In this the grandparents and other relatives can assist by coöperating rather than hindering in the arrangement.

We therefore order that the care and custody of Beverly Olson be awarded to her parents, Helmer and Pearl Olson,

and reserve jurisdiction of the case for one year without prejudice to the parties hereto, within said period, to petition this court for such modification or amendment of this order as the circumstances require.

Affirmed.

