### STATE EX REL. RUSSELL GORDON MERRITT v. PHILIP R. ELDRED.[1]

November 14, 1947.

No. 34,483.

*Doherty, Rumble, Butler & Mitchell* and *Frank Claybourne,* for appellant (respondent below).

*Edwin A. Martini,* for respondent (relator below).

MAGNEY, JUSTICE.

Upon the relation of Russell Gordon Merritt, the district court for Ramsey county granted its writ of habeas corpus for the possession of relator's seven-year-old child, Barbara Joan Merritt. Respondent below, Philip R. Eldred, appealed. The matter is before this court *de novo* upon the evidence taken at the hearing before the district court.

---

[1]Reported in 29 N. W. (2d) 479.

Merritt, now 36, and Mary Elizabeth Losinski were married January 4, 1939. They separated in the fall of 1939. Barbara, the lawful issue of this marriage, was born January 29, 1940. On October 14, 1940, Merritt was granted a divorce by default. The custody, care, and control of Barbara was awarded to the mother, and Merritt was required to pay ten dollars a month for her support. Merritt was married January 7, 1942, to Jeanette Clare, now 26, his present wife. He joined the United States army on May 20, 1942, and was honorably discharged on October 13, 1945, having served overseas 27 months. He is employed by the Coolerator Company of Duluth, where he works days and earns about $95 every two weeks. He is the owner of a five-room home, valued at $4,300, subject to a mortgage of $3,636.27, which is being paid off in monthly installments. He is a church member, attending regularly. He is a fit and proper person to have the custody of Barbara. His present wife is a high-school graduate, who formerly was employed as a telephone operator and stenographer. Their home is suitable for Barbara. The wife wants the custody of Barbara and would like to adopt her.

Mary Elizabeth, Merritt's former wife and the mother of Barbara, married Philip R. Eldred in November 1941. Three children were born to them, two girls and a boy, the oldest now about five years old and the youngest one year. They lived in St. Paul. She was stricken with poliomyelitis in July 1946 and died in January or February 1947. Eldred, 33 years of age, is employed as steward at the Minnesota Club. He earns $180 a month and board. For the last year and a half he has worked a split shift—from 9:45 to 2 and from 5 to 9:30 or 10. The family lives in a rented four-room apartment with bath. Since his wife's death, Eldred's mother, 62 or 63 years of age, in average health, who lives in the neighborhood, has helped Eldred take care of the children. The three-year-old boy stayed with an uncle and aunt for six months before the hearing. The children are well cared for, happy, and well disciplined, better than average. Eldred admits that living conditions are not the best. He has been trying to get a home with a yard and also a house-

keeper. He is a member of the Catholic church, and Barbara has been baptized in that faith. No attempt was made to show that Eldred is not a fit and proper person to have the custody of Barbara.

Barbara lived with her maternal grandparents in Duluth until she was one and a half years old, when the mother took her to St. Paul. She lived with her stepfather after that time until March 31, 1947, when the district court gave Merritt control of Barbara, and since May 1, 1947, she has been in his custody. She has affection for her stepfather and gets along very well with the other children. She has spent several weeks at the home of her maternal grandparents in Duluth and at their lake cottage. The paternal grandmother also lives in Duluth. Merritt contributed up to $150 at the rate of ten dollars per month for the support of Barbara and paid up a loan of $150 incurred for educational purposes for his former wife. At her request, he did not pay the lying-in expenses. In the fall of 1941, Merritt's former wife stated that she did not wish any more money or presents from him; that, as she was about to marry Eldred, she did not want Merritt to enter into their family life at all or interfere with her coming family. He complied. He did not see Barbara from the fall of 1941 until he saw her in the courtroom at the time of the hearing. While in the army, Merritt made inquiries about the child through his mother and brother. Upon this set of facts, the trial court awarded the custody of Barbara to her maternal grandparents until May 1, 1947, and to her natural father thereafter. Eldred, the stepfather, appealed.

In State ex rel. Platzer v. Beardsley, 149 Minn. 435, 438, 183 N. W. 956, 957, this court held that there is a presumption that a parent is fit to have the custody of his child. It said:

"* * * we are guided by the rule that a mother has a natural right to and should not be deprived of the custody of her child, unless it is made to appear that the best interests of the child demand it. [Case cited.] The presumption is that a mother is a fit and suitable person to be entrusted with the care of her child, hence in the present case the burden was upon the appellants to overcome

the presumption by satisfactory evidence. State [ex rel. Lehman] v. Martin, 95 Minn. 121, 103 N. W. 888."

Continuing, the court said (149 Minn. 438, 183 N. W. 958):

"* * * The ties by which mother and child are bound together should not be severed except for grave and weighty reasons."

In State ex rel. Fossen v. Hitman, 164 Minn. 373, 375, 205 N. W. 267, this court, speaking through Mr. Justice Holt, said:

"The law is well settled in this state that the natural parents have the first right to the care and custody of the child, unless the best interests of the child require it to be given into the hands of some one else. Best interests in this sense do not mean that the child may have an easier or more luxurious life and greater prospect of inheritance with others than with the natural parents, but rather, if in the parents there is such a lack of moral stamina or ability to gain a livelihood, that it is made to appear that the child must go without proper education and moral training or suffer want under their care and custody, then the best interests of the child are at stake. Mere poverty of the parents is seldom, if ever, a sufficient ground for depriving them of the natural right to the custody of their child, to say nothing of the statutory right (G. S. 1923, § 8933). Such moral delinquency or inability to furnish the child with needed care as in State ex rel. [Anderson] v. Anderson, 89 Minn. 198, 94 N. W. 681, and State ex rel. [Larson] v. Halverson, 127 Minn. 387, 149 N. W. 664, induced the court to temporarily withhold the right to the custody of the child from the parent, is not present in the instant case. The rights of a parent are well stated and limited in State ex rel. [Lehman] v. Martin, 95 Minn. 121, 103 N. W. 888; State ex rel. [Renning] v. Armstrong, 141 Minn. 47, 169 N. W. 249; State ex rel. [Machgan] v. Pelowski, 145 Minn. 383, 177 N. W. 627."

See, also, State ex rel. Mattes v. Peterson, 156 Minn. 178, 194 N. W. 326; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927; State ex rel. Vik v. Sivertson, 194 Minn. 380, 260 N. W. 522; State

ex rel. Olson v. Sorenson, 208 Minn. 226, 293 N. W. 241; State ex rel. Peterson v. Sanders, 215 Minn. 502, 10 N. W. (2d) 387.

Applying the law to the facts in the instant case, Merritt has the first and paramount right to the care and custody of Barbara, his daughter, and should not be divested of that custody unless it appears that the best interests of Barbara demand it. The record shows that both Eldred and Merritt are men of good moral character. They are both steadily employed, with about the same income. Eldred is a widower with three other children to support, living in a rented four-room apartment, which he himself states is not satisfactory. He is apparently very much attached to Barbara. Merritt is living with his wife in a five-room home, which he is buying on a contract. We hold that Merritt has the first and paramount right to the care and custody of Barbara, his daughter, and it does not appear from the evidence that her best interests demand that he be divested of that right. Although our determination will cause great disappointment to Eldred, he must realize that under the law and the facts we cannot hold otherwise.

Let judgment be entered awarding custody to relator.