STATE EX REL. HARRY W. SCHROEDER v. ARTHUR BOEHLAND.[1]

June 13, 1952.

No. 35,839.

*Randall, Smith, Blomquist & Krawetz* and *Perry M. Wilson, Jr.*, for appellant.

*Gallagher, Farrish & Sheran*, for respondent.

[1]Reported in 53 N. W. (2d) 814.

CHRISTIANSON, JUSTICE.

Relator, Harry W. Schroeder, appeals from an order of the district court for Blue Earth county quashing its writ of habeas corpus, issued to obtain custody of relator's four-and-one-half-year-old daughter, Christine Louise Schroeder, detained by her maternal grandfather, Arthur Boehland, respondent herein. The matter is before us *de novo* upon the evidence taken at the hearing before the district court.

Christine Louise Schroeder was born at Mankato on October 17, 1947. Her mother, wife of the relator and daughter of respondent, died three months after her birth. There were no other children. Relator and his wife lived with the Boehlands on their farm near Mankato. Relator was stationed at Mankato as a recruiter for the United States army at the time. Following his wife's death, he remained at the Boehland home with his daughter for about 40 days. He was then transferred to Bolling Field, Washington, D. C. He told the Boehlands that he would leave Christine with them, with the understanding that as soon as he was able to have her with him he would take her. After an absence of about three months, relator was discharged from the army and returned to Mankato, where he continued to live at the Boehland residence with his daughter. He entered Mankato State Teachers College, where he remained as a student for one school year, residing with the Boehlands. He then transferred to the University of Minnesota, leaving Christine with the Boehlands and visiting them and his daughter on week ends two or three times each month. Since starting his graduate work at the university, he has been working part time as an assistant instructor at the university. He continued to visit his daughter about every third or fourth week thereafter until November 30, 1951, at which time he found it inadvisable to continue his visits to the Boehland farm because of difficulties which arose out of his demands that he be allowed to have Christine live with him and his present wife. His petition to obtain custody of the child was filed with the district court on January 2, 1952.

Relator met his present wife while they were both studying plant pathology at the University of Minnesota. They were married on December 7, 1951. About six months prior to their marriage, Mrs. Schroeder became acquainted with Christine and throughout her engagement to him was fully aware of relator's feeling of responsibility to his daughter. She anticipated that Christine would live with them as soon as they were married. She likes children and wants to have Christine live with them. Mrs. Schroeder is a Mexican citizen. She first came to Minnesota in 1946 through a Rockefeller Foundation fellowship to study plant pathology at the University of Minnesota. She is well educated, having received a Bachelor of Science degree in biology from the University of Mexico and a Master of Science degree from the University of Minnesota in plant pathology. She taught school and worked for the Rockefeller Foundation for seven years. As soon as she is eligible, she intends to apply for American citizenship.

Relator and his wife are living in Minneapolis at University Village, which is a group of buildings owned and maintained by the university for students, graduate students, and teaching assistants at the university. It is a requirement that the persons occupying these units be married, and the majority of them have families, the average age of all children being under eight or nine years. There are adequate school facilities nearby and a Presbyterian church, which the Schroeders regularly attend. Mrs. Schroeder is keeping house for her husband at the present time. It is not contemplated that she will do any outside work. She is 34 and relator is 35 years of age.

Relator is earning $135 per month from the university as an assistant instructor. In addition, he receives $75 per month during two quarters of the school year under the G. I. bill. His present status as an assistant instructor and graduate student will continue for at least two or three years. It is anticipated that his minimum income will be $210 per month and his maximum rental $45 per month for living quarters at University Village. Upon successful completion of his educational program, he will become a

Doctor of Philosophy in the field of plant pathology. He has purchased some of his daughter's clothing and has provided the medical and dental care required since her birth. He has carried $11,000 in life insurance, payable to his daughter on his death, at a cost of $220 per year. He and his wife have no outstanding obligations except a balance of $50 remaining unpaid on their automobile.

Respondent and his wife live on their own farm a few miles outside of Mankato. They are 53 and 49 years of age respectively. They are prosperous farmers, have a modern seven-room house, and enjoy an excellent reputation in their community. The child, Christine, has lived in their home since birth. Mrs. Boehland stopped teaching school when her daughter died so as to take care of Christine. Naturally, they both have become very much attached to her and she to them. If she is left with them, they plan to provide for her education. She is a healthy, happy child, and they have taken good care of her and provided well for her. She is their sole heir. They have graciously declined relator's offer to compensate them for the child's care. There is no question that Christine has been given a good home and an abundance of love and affection by her grandparents.

On the other hand, relator is a young man of ambition and good character. He appears to have done as much as he could for his daughter under the circumstances. There is nothing to indicate that he will be unable to give her the care and love which she should normally expect from her father. Although the living quarters presently occupied by the Schroeders are not as desirable as those owned by the Boehlands, it appears that with a minimum delay of one month there will be larger and better accommodations available for the Schroeders at University Village.

In State ex rel. Fossen v. Hitman, 164 Minn. 373, 375, 205 N. W. 267, this court, speaking through Mr. Justice Holt, said:

"The law is well settled in this state that the natural parents have the first right to the care and custody of the child, unless the best interests of the child require it to be given into the hands of some one else. Best interests in this sense do not mean that the

child may have an easier or more luxurious life and greater prospect of inheritance with others than with the natural parents, but rather, if in the parents there is such a lack of moral stamina or ability to gain a livelihood, that it is made to appear that the child must go without proper education and moral training or suffer want under their care and custody, then the best interests of the child are at stake. Mere poverty of the parents is seldom, if ever, a sufficient ground for depriving them of the natural right to the custody of their child, to say nothing of the statutory right (G. S. 1923, § 8933). Such moral delinquency or inability to furnish the child with needed care as in State ex rel. [Anderson] v. Anderson, 89 Minn. 198, 94 N. W. 681, and State ex rel. [Larson] v. Halverson, 127 Minn. 387, 149 N. W. 664, induced the court to temporarily withhold the right to the custody of the child from the parent, is not present in the instant case. The rights of a parent are well stated and limited in State ex rel. [Lehman] v. Martin, 95 Minn. 121, 103 N. W. 888; State ex rel. [Renning] v. Armstrong, 141 Minn. 47, 169 N. W. 249; State ex rel. [Machgan] v. Pelowski, 145 Minn. 383, 177 N. W. 627."

See, also, State ex rel. Mattes v. Peterson, 156 Minn. 178, 194 N. W. 326; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927; State ex rel. Vik v. Sivertson, 194 Minn. 380, 260 N. W. 522; State ex rel. Olson v. Sorenson, 208 Minn. 226, 293 N. W. 241; State ex rel. Peterson v. Sanders, 215 Minn. 502, 10 N. W. (2d) 387; State ex rel. Merritt v. Eldred, 225 Minn. 72, 29 N. W. (2d) 479; State ex rel. Rys v. Vorlicek, 229 Minn. 497, 40 N. W. (2d) 350.

Applying the law to the facts in the instant case, relator has the first and paramount right to the care and custody of Christine, his daughter, and he should not be divested of that custody unless it appears that the best interests of Christine demand it. The record discloses that all parties to this proceeding are of good character and that Christine will be properly cared for, regardless of which party is awarded her custody. Relator's love for the child appears beyond question.

The language of Mr. Justice Dibell in State ex rel. Herniman. v. Markson, 187 Minn. 176, 179, 244 N. W. 687, 688, involving a 12-year-old boy in similar circumstances, seems particularly appropriate here:

"* * * The grandparents must accept the inevitable. They will make their own sorrow and that of their grandson less if they accept the situation gracefully with a realization that they have done an appreciated good service for the boy just as have many good grandparents before them. The boy will soon accommodate himself to his changed surroundings. He can be in communication with his grandparents.

"All realize that the grandparents' custody must terminate before many years. It is best that the change come now."

Respondent and his wife can take solace and satisfaction in the fact that they have faithfully performed a service for their little granddaughter which will influence her for good throughout her lifetime. For this, their son-in-law should be forever grateful.

The order of the district court is reversed and custody of the child is awarded to relator.

Reversed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.