242 Minn. 112 (1954)
HULDA MOLTO, NOW KNOWN AS HULDA WIMPFHEIMER,
v.
MARTIN MOLTO.[1]
No. 36,225.
Supreme Court of Minnesota.
April 23, 1954.
Steining, Olson & Thysell, for appellant.
Stanley C. Olson, for respondent.
DELL, CHIEF JUSTICE.
Plaintiff appeals from an order of the district court of Norman county modifying the judgment entered in a divorce action relating *113 to the custody of Mavis Molto, eight years of age, the only child of the parties.
The plaintiff and the defendant were married in June 1944. They separated in November 1950. Thereafter plaintiff instituted an action for divorce against the defendant alleging cruel and inhuman treatment. The defendant answered and served a cross-complaint in which he sought a divorce from the plaintiff upon the same grounds. After a trial the court, on March 1, 1952, entered its findings. Judgment was entered on March 3, 1952. Defendant was granted a divorce from the plaintiff on the grounds of cruel and inhuman treatment, and the custody of the child was awarded, until otherwise ordered by the court, to the defendant for that part of each year from June 15 to August 15 and to the plaintiff for the remainder of each year. The findings and judgment provided:
"During the part of each year when the defendant shall have the custody of said child she shall be cared for by and in the home of Arthur Molto and his wife and the defendant shall pay them for the reasonable value of such care."
On May 19, 1952, in violation of M.S.A. 517.03, plaintiff married Christ Wimpfheimer. They established a home in Fargo, North Dakota. During the remainder of 1952 and until August 13, 1953, Mavis lived with the plaintiff and her husband in Fargo and with Arthur Molto and Helma Molto, his wife, on their 240-acre farm in Norman county, Minnesota, under the divided custody arrangement provided for by the judgment. Arthur and Helma Molto are the uncle and aunt of the child.
On August 13, 1953, the defendant, under § 518.18, petitioned the court for a modification and revision of said judgment so as to secure an award granting the full custody of said child to Arthur and Helma Molto subject to the right of the plaintiff to visit said child at such times and under such circumstances as the court might deem proper. After a hearing upon the petition, partly upon affidavits and partly upon oral testimony, the court, on August 25, 1953, entered its order modifying and revising the judgment and specified:
*114 "Until otherwise ordered by the court Arthur Molto and his wife Helma Molto shall have the actual custody of Mavis Molto upon the following conditions:
"(A) Arthur Molto and Helma Molto shall care for Mavis in their home; they shall provide her with the maintenance, attention, support and supervision that they would if she were their own child; and they shall cause her to regularly attend school and Sunday School.
"(B) The plaintiff and the defendant shall each have the privilege of visiting Mavis at reasonable times and intervals."
The issue before us is whether the trial court abused its discretion in modifying and revising the judgment relating to the custody of the child as above set forth.
We consider this matter under well-established rules and principles of law. Normally custodial preference of small children is for the mother. The paramount and primary consideration, however, is the welfare of the child and to that welfare the rights of the parents must yield. The natural rights of the parents should be carefully safeguarded but not at the expense of their children. In arriving at a solution, the trial court is vested with broad discretionary powers and in the absence of a showing of arbitrary action in awarding custody of a child, this court will not interfere. It should be kept in mind that a trial court, unlike an appellate court, has the opportunity to see the parties as well as their witnesses, hear their testimony, observe their actions, and weigh the evidence in the light of those factors. In the absence of a clear abuse of discretion the action of the trial court must be affirmed. Aske v. Aske, 233 Minn. 540, 47 N.W. (2d) 417; Wicklem v. Wicklem, 229 Minn. 478, 40 N.W. (2d) 69; Christianson v. Christianson, 217 Minn. 561, 15 N.W. (2d) 24; Dacey v. Dacey, 179 Minn. 520, 229 N.W. 868; Spratt v. Spratt, 151 Minn. 458, 185 N.W. 509, 187 N.W. 227; Novotny v. Novotny, 152 Minn. 420, 189 N.W. 258; In re Adoption of Jaren, 223 Minn. 561, 27 N.W. (2d) 656; Hervey v. Hervey, 180 Minn. 182, 230 N.W. 479; State ex rel. Price v. Price, 211 Minn. 565, 2 N.W. (2d) 39; Polzin v. Polzin, 237 Minn. 164, *115 54 N.W. (2d) 143; French v. French, 236 Minn. 439, 53 N.W. (2d) 215.
This court in the case of State ex rel. Rys v. Vorlicek, 229 Minn. 497, 499, 40 N.W. (2d) 350, 351, stated:
"The applicable principles of law have been stated on many occasions and are so well stated in State ex rel. Olson v. Sorenson, 208 Minn. 226, 227, 293 N.W. 241, that they bear restating here. In that case we said:
"`* * * All other things being equal, the natural parents have the paramount right to the care and custody of a child. State ex rel. Anderson v. Anderson, 89 Minn. 198, 94 N.W. 681; State ex rel. Lehman v. Martin, 95 Minn. 121, 103 N.W. 888; State ex rel. Renning v. Armstrong, 141 Minn. 47, 169 N.W. 249; State ex rel. Machgan v. Pelowski, 145 Minn. 383, 177 N.W. 627; State ex rel. Fossen v. Hitman, 164 Minn. 373, 205 N.W. 267; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N.W. 927. That right is not absolute, however, and must yield to the child's welfare. If its best interests will be served by granting custody to someone else that will be done. Gauthier v. Walter, 110 Minn. 103, 124 N.W. 634; State ex rel. Larson v. Halverson, 127 Minn. 387, 149 N.W. 664; State ex rel. Neib v. Krueger, 143 Minn. 149, 173 N.W. 414; State ex rel. Henning v. Gundvaldson, 169 Minn. 335, 211 N.W. 310; State ex rel. Lund v. Anderson, 175 Minn. 518, 221 N.W. 868; State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N.W. 927.'"
Divided custody of a child between two different homes and two different home influences should not be encouraged even where both homes are proper, since the shunting of a child back and forth is likely to cause disturbance and contention between the child and the custodians. Larson v. Larson, 176 Minn. 490, 223 N.W. 789. In considering the issue of custody the trial court is not limited to any particular line of inquiry nor is it bound by the strict legal rules governing the introduction of evidence, and its orders and directions in that respect are not subject to the same legal tests usually applicable in the trial of other causes. Arne v. Holland, 85 Minn. 401, 89 N.W. 3.
*116 Plaintiff was the mother of three illegitimate children, two of whom were born prior to her marriage to the defendant. At the time of the trial of the divorce action, unknown to the defendant and to the court, she was pregnant with another child conceived as a result of adulterous intercourse with her present husband after she left the defendant. That child was born on April 28, 1952. On May 19, 1952, she married Wimpfheimer. After the child was born she concealed its identity from Mavis, representing to her that it was a neighbor's child and that she was caring for it on behalf of the neighbor. Later she told Mavis the truth and that the child was hers.
The Wimpfheimers live in Fargo in the lower apartment of a duplex dwelling house. The apartment consists of a kitchen, dining room, bedroom, and living room also used as a bedroom. Plaintiff, her husband, and the infant child occupy the bedroom; and her son, Robert, and Mavis sleep alone in the other room, although Robert is 11 years of age. Plaintiff works at a clinic in Fargo five days of the week from about 8 a.m. to 5 p.m. On Saturdays she works until noon. She receives $110 a month. Her husband is employed as a baggageman for the Railway Express Agency on a run between St. Paul, Minnesota, and Minot, North Dakota. His employment keeps him away from home four consecutive days and the following four consecutive days he is at home. His take-home pay is $280 a month.
While plaintiff and her husband are at work, Mavis has no supervision except such as the neighbors or school authorities provide. The plaintiff's infant child is cared for by a neighbor while plaintiff is at work. Occasionally plaintiff leaves for work before the children have eaten their breakfast. On those occasions she prepares their breakfast for them but they must eat alone. Plaintiff does not return to her home for lunch. The children are required to eat a cold lunch obtained by them from the refrigerator. Plaintiff and her husband have had difficulty in getting Mavis to mind. The child, while under their care, has been stubborn, unruly, and difficult to handle. She displays a disposition to do as she pleases. Often it has *117 been necessary to spank the child to make her obey. On occasions her stepfather, Wimpfheimer, has told her that he would send her home to her father. Plaintiff is somewhat flighty and unstable.
Arthur Molto and his wife, Helma, are 50 and 51 years of age. They have no children of their own. They live on a 240-acre farm in Norman county two and one-half miles from the village of Gary. Their dwelling is large, well maintained, and partly modern. It is located within a few hundred feet of the route of the school bus serving a modern school in Gary. The school provides instruction in eight primary and four high-school grades. Arthur Molto and his wife are highly respected in their community. They have taken excellent care of Mavis during the summer months of 1952 and 1953. They have displayed deep affection toward her and she has reciprocated with like affection for them. They are anxious and able to furnish Mavis with a good home and to treat her as a child of their own. Mavis has expressed her desire to neighbors to live with the Moltos on the farm and to attend school at Gary. They have had no difficulty with controlling her and she is happy, contented, obedient, and respectful to them. It is quite clear that in their home Mavis will receive proper care and supervision. If she were to continue to live with the plaintiff, there would be three sets of children in the home which could well result in jealousy and friction. Maron v. Maron, 238 Iowa 587, 28 N.W. (2d) 17.
The showing of changed circumstances since the judgment of divorce, together with material facts unknown to the court at the time it made its original award of custody, are sufficient to support the order of modification in the furtherance of the child's welfare. The fact that the court made no specific finding that the plaintiff is morally or physically unfit to have the custody of Mavis is not controlling. The overriding issue is that of the welfare of the child. And on this issue the court found that the child's welfare would best be served by placing her in the custody of Arthur and Helma Molto until otherwise ordered. On the record before us we cannot say that the court abused its discretion or that its action was arbitrary. This is particularly true when consideration is given to the *118 fact that Mavis, under the original judgment, has been living two months out of each year with the Moltos and is not moving into a new and strange home.
M.S.A. 518.14 empowers the court, in its discretion, to require the husband to pay any sum necessary to enable the wife to carry on or defend a divorce action. We have held that we may allow suitable attorney's fees and necessary expense in appeals in divorce cases even where the wife is the losing party. Gerard v. Gerard, 216 Minn. 543, 13 N.W. (2d) 606; Visneski v. Visneski, 219 Minn. 217, 17 N.W. (2d) 313; Crowley v. Crowley, 219 Minn. 341, 18 N.W. (2d) 40; Ellingson v. Ellingson, 227 Minn. 149, 34 N.W. (2d) 356; 6 Dunnell, Dig. (3 ed.) § 2804. We have also held that, where a proceeding was instituted to obtain a modification of the provisions of a judgment entered in a divorce action relating to the custody of children, the application is essentially an incident or step in the continuance of the divorce suit authorizing this court to allow counsel fees. Spratt v. Spratt, 151 Minn. 458, 185 N.W. 509, 187 N.W. 227. We are authorized, in our discretion, to allow costs to the prevailing party upon judgment in his favor upon the merits not exceeding $25. M.S.A. 607.01. See, Supreme Court Rule XV, 222 Minn. xxxvii. However, in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred. § 607.01. The language of this statute plainly gives this court no discretion in the allowance, disallowance, or apportionment of disbursements necessarily paid or incurred. Collins v. Collins, 221 Minn. 343, 22 N.W. (2d) 168, 23 N.W. (2d) 9; Krusemark v. Krusemark, 232 Minn. 416, 46 N.W. (2d) 647; Aske v. Aske, 233 Minn. 540, 47 N.W. (2d) 417. Plaintiff's appeal cannot be said to be without merit and we, therefore, conclude that a proper allowance should be made to her under § 518.14 to cover her necessary expenses of the appeal. We, accordingly, allow her $200 to cover her attorney's fees on the appeal and $296.25 as an allowance to cover her expenses. In the event that defendant taxes disbursements against her in this court as the prevailing party, an additional allowance under § 518.14 is granted to her to offset that item.
Affirmed.
NOTES
[1] Reported in 64 N.W. (2d) 154.