In the Matter of the WELFARE OF W.R. and A.R., Children.

No. CX–85–459.

Court of Appeals of Minnesota.

Dec. 17, 1985.
Review Denied Feb. 19, 1986.

Jennifer R. Wellner, Bemidji, for appellant.

Ronald K. Carpenter, Bemidji, attorney and guardian ad litem for Children.

Timothy R. Faver, Bemidji, for respondent.

· Marlene Hardy, Cass Lake, for Cherokee Nation Leech Lake Family Services.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Beltrami County authorities initiated an action for the termination of parental rights of appellant, father of A.R. and W.R. He appeals from the trial court's decision to grant the petition. We affirm.

## FACTS

A.R. and W.R. are the children of appellant, a Cherokee Indian, and D.R., a caucasian. A.R. is 11 years old; her brother is 12. The children presently reside with foster parents.

1.

The trial court found that the children were abandoned by their parents. *See* Minn.Stat. § 260.221(b)(1) (1984). The parental rights of the children's mother were voluntarily terminated on January 4, 1984. *See* Minn.Stat. § 260.221(a). Appellant has not seen the children since 1981 and has had little contact with them since 1979. From the time the children were born, their parents would leave them with their grandparents for extended periods of time. During the twelve years of his life, W.R. has resided with his parents for a total of three years. A.R. has lived with her parents for approximately four of her eleven years. The parents' last absence commenced on November 5, 1979, when they left the children with their maternal grandmother and did not indicate when they would return for them. The children stayed with their grandmother until January 23, 1981, when they were placed in the home of their present foster parents.

Appellant has done little to maintain contact with the children and has failed to meet a minimum standard of compliance with court-ordered programs designed to maintain contact between the father and his children. The children wrote frequently to their father, but became discouraged because of his failure to respond to their letters. He has had only sporadic and short telephone conversations with the children and has sent the children few gifts despite promises to do so.

The last contact Beltrami County Social Services had with appellant was on May 21, 1984. In a telephone conversation, appellant told a social worker that he had been unemployed for a number of months and was separated from his wife. When asked why he had not maintained contact with his children despite a court-ordered plan requiring him to do so, he admitted he did not call the children, but claims he did not call because of the cost. He said that he wanted to write to them but did not because writing hurt him emotionally.

2.

The trial court found that if the children were returned to appellant's custody, the result would be serious emotional or physical damage to the children. *See* Minn.Stat. § 260.221(b)(4); 25 U.S.C. § 1912(f) (1982). When W.R. and A.R. were first placed in the foster home in which they now reside, they were unruly, used foul language, and refused to do chores. They refused to do their school homework and threw their school books at their foster mother when she attempted to assist them. They did not get along with their peers.

The children's emotional problems manifested themselves through physical ailments. W.R. suffered from ulcers and chronic bed wetting. A.R. was prone to stomachaches and headaches. Expert testimony at trial suggested that the children's symptoms were caused by stress.

The trial court found that since their placement in the foster home, the children's emotional problems have been overcome to a great extent: W.R. is no longer receiving treatment and his ulcers have healed. A.R. is still undergoing treatment, but her symptoms have improved greatly.

3.

The trial court found that appellant has "failed to cooperate" with the efforts of social service agencies to correct conditions that led to a 1983 determination that the children were dependent. *See* Minn.Stat. § 260.221(b)(5). Beltrami County Social Services, its counterpart in appellant's home county of Sequoyah in Oklahoma,

and the Cherokee nation attempted to remedy the adverse relationship that existed between appellant and his children. A court order issued in February 1980 required the children's parents to participate in marriage counseling, parenting classes, and psychological evaluation. The same court order encouraged the parents to visit their children frequently. The parents were given a voice in the foster placement of their children. The social service agencies contacted appellant numerous times after his divorce from the children's mother in an effort to improve the situation of his children. All of these efforts were thwarted by the failure of appellant to take minimal steps to comply with social service suggestions.

### 4.

The trial court found proven beyond a reasonable doubt, and in part by expert testimony, that the continued custody of the children with their father would result in serious emotional or physical damage to the children. *See* 25 U.S.C. § 1912(f) (1982) (Indian Child Welfare Act provision requiring proof beyond a reasonable doubt, and by expert testimony, that continued custody by the parents would be detrimental to the children). At trial, the state called Greg Ramey, a Beltrami County social worker with eleven years experience, who has worked on this case since 1979. Ramey has an undergraduate degree and has earned some graduate credits. He attended numerous seminars at which child abuse was the topic.

### ISSUES

1. Did the petitioner establish that termination of parental rights was proper in this case?

2. Does the Indian Child Welfare Act of 1978 preclude the termination of an Indian parent's parental rights where the children are not in the custody of the parent?

3. Were notes of a telephone conversation properly admitted into evidence under the business records exception to the hearsay rule?

### ANALYSIS

### I.

Termination of parental rights is controlled by statute. *See* Minn.Stat. § 260.-221 (1984) (grounds for termination of parental rights). The decision is a drastic step that can only be taken for grave and weighty reasons. *In re Welfare of H.G.B.*, 306 N.W.2d 821, 825 (Minn.1981).

■ Standards for appellate review of a trial court's decision to terminate parental rights are stringent. *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). The Minnesota Supreme Court has said repeatedly:

> [T]his court will continue to exercise great caution in termination proceedings, finding such action proper only when the evidence clearly mandates such a result in accordance with statutory grounds.

*In re Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978). On the implications of this standard, the supreme court stated:

> This language indicates that, while this court will give some deference to the trial court, it will closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing.

*In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980).

It is the trial court's duty to consider, when determining whether parental rights should be terminated, whether the petitioner proved by clear and convincing evidence that termination is mandated. *In re Welfare of Solomon*, 291 N.W.2d 364, 367–68 (Minn.1980). There is a presumption in favor of maintaining parental rights. *Clausen*, 289 N.W.2d at 156. The trial court is required to "make clear and specific findings which conform to the statutory requirements." *Id.* at 155.

■ Minnesota statutory law provides the bases upon which parental rights may be terminated. *See* Minn.Stat. § 260.221. Section 260.221 provides, in pertinent part:

The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:

\* \* \* \* \* \*

If it finds that one or more of the following conditions exist:

That the parent has abandoned the child; or

\* \* \* \* \* \*

That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child; or

\* \* \* \* \* \*

That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination \* \* \*.

Minn.Stat. § 260.221, subd. b(1), (4), (5). Because the children involved are the children of an American Indian, appellant is entitled to the additional safeguards of federal law. *See* 25 U.S.C. § 1912(f) (1982). Section 1912(f), which is part of the Indian Child Welfare Act, provides that parental rights of Indians may be terminated only upon a showing

by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent \* \* \* is likely to result in serious emotional or physical damage to the child.

*Id.*

■ The trial court found that A.R. and W.R. were abandoned by appellant. The children last saw their father in 1981, and he has contacted them rarely and sporadically. The evidence and the trial court's findings prove clearly that the father has abandoned the children. *See* Minn.Stat. § 260.221(b)(1). Thus, termination upon the basis of abandonment was proper.

The trial court also found that termination of parental rights was appropriate because placement with the father would cause the children severe emotional and physical trauma. *See id.* § 260.221(b)(4). When the children were first placed in foster care, each displayed emotional and physical symptoms, including bedwetting, unruliness, headaches, and stomachaches. Those symptoms have largely disappeared during their tenure with the foster parents. Furthermore, the children express fear of their father and they have upon occasion become unruly when it was suggested that they were being sent to visit their father. This evidence adequately supports the trial court's finding that placement with the father would be "permanently detrimental to the physical or mental health of the [children] \* \* \*." *Id.* In fact, the evidence upon this point is overwhelming. The stricter "reasonable doubt" standard of the Indian Child Welfare Act is met. *See* 25 U.S.C. § 1912(f).

We agree also with the trial court's determination that termination was mandated because of appellant's failure to meet minimal standards of compliance with social service efforts to bring appellant and the children back together. *See* Minn.Stat. § 260.221(b)(5). Appellant has not maintained contact with his children despite a court-ordered plan that included a provision for maintaining contact. Appellant signed a contract in which he promised to phone, write, and visit. He has seldom written to the children despite the children's efforts to write every other week. He has phoned only upon a sporadic basis, and he has never visited the children.

At one time, Beltrami County Social Services had arranged for the children to travel to Oklahoma to visit their father. Appellant told the social service office that he would not be able to care for the children in his home, but that they could stay with his parents, who lived nearby. The Sequoyah County Department of Human Services, which had been working with appellant in Oklahoma, relayed to the social workers in Minnesota that it would be inappropriate

for the children to stay with their paternal grandparents while visiting their father. The social worker in Oklahoma stated that he would be "ill at ease" to have the children staying with their grandparents. Therefore, plans for the visit were cancelled. The fact that arrangements were never made to accommodate a visit is disturbing, but it does not excuse appellant's other failures to maintain contact with his children.

The social service offices in Minnesota and Oklahoma made considerable efforts to remedy the adverse situation that existed. These efforts failed, primarily because of inaction by appellant. Thus, termination of parental rights was appropriate because the reasonable efforts made failed to remedy the conditions that led to the determination that the children were dependent. *See* Minn.Stat. § 260.221(b)(5).

We are mindful of the grave consequences that result from the termination of parental rights. Termination is a drastic step that should not be taken absent a clear finding that the step is necessary. Such a case is present here. We are satisfied that the trial court properly and sufficiently considered the statutory factors for termination of parental rights.

█ Appellant suggests that the trial court improperly considered his poverty when deciding whether his parental rights should be terminated. It is true that "[m]ere poverty of the parents is seldom, if ever, a sufficient ground for depriving them of the natural right to the custody of their child * * *." *State ex rel. Fossen v. Hitman,* 164 Minn. 373, 375, 205 N.W. 267, 268 (1925). We are satisfied, however, that the trial court found adequate reasons for termination independent of appellant's poverty. The trial court properly considered that appellant failed to make the minimal efforts that were within his ability, regardless of his poverty.

## II.

█ Appellant argues that because the children were not in the custody of their father when termination proceedings were commenced, the termination was improper under the Indian Child Welfare Act. *See* 25 U.S.C. § 1912(f). Section 1912(f) states that the court must be satisfied that "the *continued custody* of the child by the parent" would be detrimental to the welfare of the children. *Id.* (emphasis added). Appellant argues that this language is to be interpreted as requiring present custody of the children by the parents before termination proceedings may commence.

Appellant's interpretation of the statute would require that neglected Indian children be left in the parental home while termination proceedings were pending. In the present case, appellant apparently would require that the children be removed from their foster home and placed with their father before termination proceedings could properly begin, even though the children barely know him.

Past cases in which the courts have analyzed section 1912(f) have not imposed a custodial requirement. *See, e.g., In re Welfare of T.J.J. and G.L.J.,* 366 N.W.2d 651 (Minn.Ct.App.1985). We will not do so now.

## III.

During the course of the trial, Greg Ramey, a Beltrami County social worker and a witness for the state, attempted to testify about telephone conversations he had with Jim Agent, a social service worker in appellant's home county of Sequoyah in Oklahoma. Appellant's objection to the testimony was sustained. The court then allowed into evidence Ramey's notes made during the telephone conversation. The notes were admitted under the business records exception to the hearsay rule. *See* Minn.R. Evid. 803(6).

Rule 803 of the rules of evidence states in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

\* \* \* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Minn.R.Evid. 803(6).

■ The information that Greg Ramey compiled during his telephone conversation with Jim Agent concerned the whereabouts and activities of and statements about appellant. The rule states that information "in any form" may constitute a business record.

■ We are satisfied that the notes meet the rule 803(6) exception to the hearsay rule. The notes were made from information transmitted by Jim Agent, a person who had knowledge of the information transmitted because he has worked closely with this case in Oklahoma. He has visited with appellant and attempted to get him to comply with efforts made to resolve his children's neglect situation. Ramey's notes were taken and kept in a business-like fashion.

Rule 803(6) requires also that the business records must be sufficiently trustworthy. The social worker who made the notes lacked any motivation to make inaccurate notes.

### DECISION

The trial court properly terminated appellant's parental rights under each of the statutory grounds cited. Appellant has abandoned his children and has thwarted efforts that social service agencies have made to remedy the adverse situation that existed. Furthermore, the trial court properly determined, under Minnesota law and federal law, that to restore custody to appellant could be detrimental to the physical and emotional well-being of the children.

Affirmed.