**In re the Marriage of: Dennis Leland BJERKE, Petitioner, Respondent,**

**v.**

**Elizabeth Marie WILCOX, f.k.a. Elizabeth Marie Bjerke, Appellant.**

**No. C8–85–1643.**

Court of Appeals of Minnesota.

April 1, 1986.

William P. Scott, Pipestone, for respondent.

Eugene D. Mailander, Slayton, for appellant.

Heard, considered and decided by PARKER, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

In 1983, custody of the one year old child of the parties was placed with appellant. She asks for review of a 1985 amendment to the custody determination. We reverse and remand.

## FACTS

Samantha Ann Bjerke was born in February 1982. Her parents were married in 1981 when both were age 18, and the marriage was dissolved in 1983. Appellant Elizabeth Wilcox is also the parent of a son, Deryl Berglund, who was born in 1979.

In its 1983 judgment, the trial court placed custody of Samantha with appellant, but subject for one year to "protective custody" of the county welfare agency. Additionally, the court required that Samantha remain with her maternal grandmother until appellant completed residential treatment for chemical dependency.

A memorandum attached to the 1983 order for judgment contains two cursory findings dealing with the decision to place custody of Samantha with her mother. First, the court found that most "factors

seem to be equal" and the custody report is "neutral." Second, the court said it chose a placement of custody with appellant "because this would allow both children of the mother to remain together."

The 1983 findings also briefly address matters relevant to conditions placed on the grant of custody. The court found that neither party was fit to have "full" custody at that time. In its memorandum, the court added:

> The court was not impressed with the plans of either parent for the minor child and found some of their testimony unbelievable. For example, the [father] who allegedly was providing a great deal of care for the child never saw cigarette burns on the child while the [mother] who may have even seen them inflicted recalls little about the circumstances.

In April 1984, the trial court reviewed the custody arrangement and ordered that Samantha remain with her grandparents. The order called for continued welfare agency supervision, liberal "visitation" contacts with both parents, and continued chemical dependency counseling for appellant. The 1983 judgment was not amended.

In December 1984, respondent Dennis Bjerke made a motion to amend the judgment so that he would have custody of Samantha, subject only to appellant's visitation rights. Appellant asked that the motion be denied, asserting that cause for modification did not exist according to the standards of Minn.Stat. § 518.18 (1984).

In May 1985, the motion to amend the judgment was heard. A social worker recommended that Dennis Bjerke have custody of Samantha. Samantha's guardian ad litem agreed. Both of these witnesses submitted reports stating that a placement with respondent would be in the best interests of the child. The reports suggested that appellant had made too few contacts with Samantha and too little progress in dealing with her chemical dependency. The evidence showed that respondent was remarried, that he had completed a vocational course, and that he was now employed as a mechanic in Kingman, Arizona. The evidence also revealed that respondent had maintained contact with Samantha. A court appointed psychologist testified that the child's best interests would be served by continued contact with her brother and with her other relatives, most of whom live in or near Pipestone County.

Based upon evidence at the hearing, the trial court placed custody of Samantha with respondent. Accompanying findings state that appellant is unfit to have custody (not just "full" custody, the language used in 1983) and that respondent is "presently a fit and proper" custodian. The findings observe that appellant has remarried, has an infant child, and has too little room in her home for Deryl or Samantha. The court determined that appellant would be unable to assume care of her two older children until later in 1985 or sometime in 1986. It was found that respondent's visitation contacts with the child were "regular" and that appellant's contacts were "irregular."[1]

## ISSUE

Did the trial court lawfully modify its prior child custody determination?

---

1. Neither the findings in 1983 nor those in 1985 directly address the best interests of the child or the best interest factors to be considered according to the mandate of the statute. *See* Minn. Stat. § 518.17, subds. 1, 3 (1984); *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). The findings reviewed in the body of this opinion are those related to the statutory standard. The 1985 findings also addressed respondent's new marriage (then anticipated) and his new job in Arizona. The findings state that appellant and Kevin Wilcox married in May 1984, that they now live in Madison, South Dakota, about 30 miles from Pipestone County, and that they own no car. The court also found that Wilcox had worked at a new job for two weeks, but also:

> That Kevin Wilcox (spouse of appellant) has been convicted of two driving while under the influence charges since his 18th birthday and comes from a family with a history of chemical dependency problems. According to [appellant], Kevin Wilcox is unlikely to obtain full-time employment in the Madison, South Dakota area because of his and his friends prior activities.

## ANALYSIS

The characteristics of this case prevent a resolution of the matter without further trial court proceedings.

1. First, the record demonstrates distinctly conflicting views on the custody placement that would best serve the interests of the child. Particularized findings are critical here to facilitate appellate review, to ensure that prescribed standards are utilized by the trial court, and to satisfy the parties that an important question is fairly considered and decided by the trial court. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976).

The record includes evidence tending to show that the child's best interests are served by a placement of her custody with respondent. *See* Minn.Stat. § 518.17, subds. 1, 3. The trial court found in 1983 that respondent was "allegedly providing a great deal of care for the child." His circumstances have improved since then. The custodial placement with respondent is favored by a welfare agency social worker and the child's guardian ad litem. Appellant's circumstances, in contrast, involve questioned progress in restoring active contacts with her children and coping with a problem of chemical dependency.

On the other hand, there is evidence tending to show that vital interests of the child would be served by placing custody with appellant. This placement was chosen by the trial court in 1983, based on evidence heard at that time. The court found then that the decisive best interests consideration was the salvaging of the relationship of the child with her brother; as appellant asserts on appeal, split custody arrangements are unfortunate and should be carefully scrutinized. *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn.Ct.App.1984). The court-appointed psychologist confirms the current importance of the child's relationship with her brother and other relatives.[2]

Particularized findings would serve here to reveal the trial court's assessment of significant factors considered in reaching its ultimate decision, especially including the vital matters of the child's relationships with each parent, with her brother, and with her grandparents. Without these findings, the legitimacy of the trial court's decision cannot be judged by the parties or by this court. *See Rosenfeld*, 311 Minn. 76, 249 N.W.2d 168.

2. Second, the trial court chose to disregard the statutory standards for modification of a child custody determination. *See* Minn.Stat. § 518.18 (1984); *Rinker*, 358 N.W.2d at 167.[3] The 1983 custody determination may have had tentative characteristics, but we cannot overlook the actual grant of custody to appellant. The standards of section 518.18 are not optional for us or for the trial court. *Id.* Moreover, this is not an appropriate case to justify a conclusion based on evidence of record rather than findings. *See Brauer v. Brauer*, 384 N.W.2d 595 (Minn.Ct.App. 1986). It is not evident that the trial court believed there was cause for modification under section 518.18, and the statutory standards are stringent. *See State on Be-*

2. The trial court's findings do not address the care furnished to the child by her maternal grandparents. On the record the trial court stated that care by the grandparents "would eventually result in emotional harm to the child and is not in the best interests of the child." It is unclear whether the harm envisioned by the court was the fruit of speculation or was based on evidence in the case. It is noteworthy in this regard that Minnesota law does not permit a mechanical disregard for grandparent child care; where continuity of substitute care is in the best interest of a child, the normally predominate favor for parental care gives way to child welfare concerns. This matter of law has been repeatedly recognized by the Minnesota Supreme Court since the beginning of this century. *See Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971); *State ex rel. Link v. Mason*, 179 Minn. 472, 229 N.W. 582 (1930); *State ex rel. Larson v. Halverson*, 127 Minn. 387, 149 N.W. 664 (1914).

3. The trial court found that appellant was unfit, a finding that may suggest a dangerous environment, one of the statutory modification standards. *See* Minn.Stat. § 518.18(d)(iii). There are no particularized findings directly suggesting unfitness or danger.

*half of Gunderson v. Preuss,* 336 N.W.2d 546, 547–48 (Minn.1983).

3. Finally, a resolution of the case presently is complicated by a change of the child's custody during the pendency of this appeal. *See Petersen v. Petersen,* 296 Minn. 147, 149, 206 N.W.2d 658, 659 (1973). The child has now lived with her father for nearly one year. Any correction of the 1985 determination requires cautious efforts to avoid harm to the child in further disruption of her environment.

We conclude that further trial court proceedings must take place. The parties should be free to offer additional evidence, particularly as to circumstances of the child and the parents since the hearing in May 1985. Findings should be particularized on facts bearing on the standards of Minn.Stat. § 518.18. *See Gunderson,* 336 N.W.2d at 547–48; *Rinker,* 358 N.W.2d at 167. One of those standards, the need for modification judged by reference to the child's best interests, requires particular-ized findings under Minn.Stat. § 518.17. *Rosenfeld,* 311 Minn. at 82, 249 N.W.2d at 171. *See Pikula v. Pikula,* 374 N.W.2d 705, 713 (Minn.1985).

## DECISION

The trial court's judgment modifying its 1983 custody determination is reversed and remanded for further proceedings consistent with this opinion. These appellate proceedings have been expedited, with an aim for filing this decision within 15 days after submission of the case to a panel of the court. The trial court's proceedings on remand should be similarly expedited.

Reversed and remanded.