**In re the Marriage of Chris J. PFLUG, Petitioner, Appellant,**

**v.**

**Teresa A. KENNEDY, f.k.a. Teresa A. Pflug, Respondent.**

**No. CI–86–1753.**

Court of Appeals of Minnesota.

Feb. 24, 1987.

Robert A. Standke, Minnetonka, for appellant.

Constance S. Baillie, Minneapolis, for respondent.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

### MEMORANDUM OPINION

LESLIE, Judge.

After more than three years of marriage and the birth of one child, appellant Pflug and respondent Kennedy were divorced. Pursuant to agreement between Pflug and

Kennedy, the final judgment and decree provided for joint legal custody of the parties' minor child. Kennedy was granted primary physical custody. Less than one year later the issue of custody arose again because of Kennedy's move to Texas.

Kennedy and Pflug discussed the possibility of a move to Texas by Kennedy and their child in the Fall of 1984. Pflug indicated that he definitely did not want them to go, but also said Kennedy should do what she had to do. Subsequent to this conversation, Kennedy moved to Texas with her daughter. Kennedy did not receive permission for this move from Pflug or the court. Later at trial Kennedy claimed she sent Pflug a note advising him of the move and her address in Texas. Pflug admitted receiving a note but denied receiving any information concerning where Kennedy could be contacted. In fact, Pflug claimed he did not know where his son was for over 10 months. Pflug filed a missing persons report and moved the court for suspension of his child support obligation based on the absence of Kennedy and their child. This motion was served on Kennedy by mail at her last known address in Minnesota and at two suspected addresses in Texas. Kennedy received the motion but did not respond. The motion was ultimately granted.

In July of 1985 Kennedy contacted Pflug while traveling from Arizona to Texas. Because she was having emotional and chemical dependency problems, she asked for Pflug's aid in caring for their child. At trial Kennedy testified she was not getting along with the child at the time. She had not abused him, but was worried about the future. Kennedy offered to allow the child to stay with Pflug on the condition that he return the child to her upon written confirmation from a mental health professional of her readiness to care for the child again. Pflug agreed, received the child in Minnesota, and filed a motion for modification of child custody. Consequently, no letter confirming Kennedy's mental health was ever sent or received.

Pflug obtained temporary custody pending a custody study and evidentiary hearing to determine whether a permanent change in the physical custody of the child was warranted. The hearing took place before a Hennepin County family court referee.

At the hearing the custody study was presented. Part was prepared in Texas, part in Minnesota. The Texas portion assessed Kennedy as a young woman with problems who is striving to solve them. The report concluded that:

> Without a doubt she will do her very best to provide [the child] with all he needs. Teresa has family in the area who are supportive and also committed to assisting her in every way possible. * * * Teresa can provide [the child] with a home that meets his basic needs.

The Minnesota portion of the report did not make any recommendation with respect to Pflug. Instead the report recorded observations concerning the child's relationship to Pflug and his new wife and family. The report indicated this relationship was good.

Kennedy testified she had moved to Texas to improve her life and receive the support of her family, not to deprive Pflug of visitation. She stated she was a recovering alcoholic and had solved her emotional problems. She felt she now had the skills necessary to care for the parties' child. Kennedy also cited her familial support system and new fiance as positive factors in her future care of her child. Her testimony concerning her development and ability to provide was corroborated by depositions taken in Texas.

Both Kennedy and Pflug testified as to the relative merits of placement with them. After receiving this testimony, the custody report, and depositions taken in Texas, the referee made findings which included the following:

> Circumstances have changed since the entry of the Judgment and Decree herein. Mother has gone through turbulent times. Father has not been supportive of her beyond caring for the child when she requested (he charged her for "babysitting"). Mother is in the process of putting her own life on an even keel. She has not provided evidence that she is

in a position to again care for [the child]. Moreover, she has taken [the child] away from his father twice, thus interfering with his relationship with his father and vice-versa. * * * [The child] went to live with his father at the request of his mother. He is well educated and happy. He has been integrated into his father's home with the consent of his mother. It is necessary to serve his best interests that primary physical custody be transferred from mother to father.

Consequently, the referee's recommended order provided that physical custody be transferred to Pflug with other relief, including award of child support in the amount of $100 a month.

After review of the referee's recommended order without benefit of the transcript of the hearing, the trial court declined to follow the referee's recommendation. Citing the two custody reports, the trial court found that Pflug had failed to meet all the necessary requirements for modification of custody. The court found that no change of circumstances had been established and that a modification would not be in the best interests of the child. The court further found that Kennedy had not consented to a modification or to the child's integration into Pflug's family. Finally, the court found that the child's environment did not endanger his physical or emotional health. Consequently, the trial court denied Pflug's motion to modify custody. Additionally, Kennedy was granted permission to move to Texas.

## DECISION

Rule 16.02 of the Fourth Judicial District Rules provides that "[a]ppeals from a Referee shall be an independent review by the Judge on the transcript." The supreme court underscored the importance of the original trial transcript as part of a trial court's review of a referee's findings in *Peterson v. Peterson*, 308 Minn. 297, 304, 242 N.W.2d 88, 93 (1976). In *Peterson* the mother filed objections to the referee's findings and ordered a transcript of the testimony before the referee. Yet, before that transcript was completed and deliv-

ered, the trial court summarily affirmed the findings of the referee. The supreme court not only found the specific findings to be inadequate, but also found that this inadequacy was compounded by the absence of the trial transcript. The court stated:

> [I]t cannot be disputed that a fair review of the evidence adduced before the referee could not be undertaken without a transcript of the testimony of the many witnesses. Whether, absent the transcript of this testimony, the remaining record furnished all relevant and necessary facts to enable the judge to make an informed decision is at best questionable.

*Id.*

We find *Peterson* to be dispositive here. The trial court's findings lack the required specificity. *See Bjerke v. Wilcox*, 384 N.W.2d 250, 252 (Minn.Ct.App. 1986). In particular, no finding is made as to whether Kennedy intended to deprive Pflug of visitation by her move to Texas. This issue is pivotal here since any unwarranted denial of, or interference with, visitation is a factor to be considered in determining whether a custody order should be modified. *See* Minn.Stat. § 518.175, subd. 4 (1986); *Grein v. Grein*, 364 N.W.2d 383, 386 (Minn.1985). This deficiency is compounded by the absence of a transcript of the original hearing. Because a fair review of all the evidence here cannot be made without a transcript, we reverse and remand for reconsideration, such further proceedings as deemed appropriate and for further findings.

Reversed and remanded.