## STATE EX REL. MERLYN WASLIE AND ANOTHER v. ALICE WASLIE.

*152 N. W. (2d) 755.*

August 18, 1967—No. 40,687.

*Smith & Munro* and *Susanne Carroll Sedgwick*, for appellant.
*Holst, Vogel & Richardson* and *Milton I. Holst*, for respondents.

MURPHY, JUSTICE.

This is an appeal from the judgment of the District Court of Goodhue County awarding custody of a minor child to his parents. This is the second time this proceeding has reached this court. It was originally commenced by petition of Merlyn and Joyce Waslie, the parents of Michael, born December 13, 1950, in which they applied for a writ of

[20] Swogger v. Taylor, 243 Minn. 458, 68 N. W. (2d) 376.

habeas corpus directing the grandmother, Alice Waslie, to yield custody. The trial judge found that the best interests of the child required that the custody be awarded to the parents. In the original proceeding, the child did not testify. On appeal to this court, we remanded for further proceedings, requiring that the testimony of the minor child be secured so that his custodial preference and reasons therefor might be ascertained. State ex rel. Waslie v. Waslie, 274 Minn. 564, 143 N. W. (2d) 634. Pursuant to that decision, additional testimony was taken, after which the court made its findings and order awarding custody to the parents. The question for review is whether the trial court abused its discretion in awarding custody to the parents as against the grandmother in contravention of the child's expressed desires.

From the record it appears that the mother, Joyce Waslie, suffered a nervous breakdown when the child was born. When the child was 7 days old, the father placed him in the care of his mother who had custody of him since then until November 3, 1965, when his parents took him to live with them pursuant to the original order of the district court dated August 25, 1965. During the years of the grandmother's custody, the child had a good home, was well cared for, made good progress in school, and has not been a discipline problem. The parents are both about 40 years of age and reside in Cannon Falls, Minnesota. They have two younger children—a boy, 12 years of age, and a girl, 9 years of age. The father is a mechanic, drives a truck occasionally, and was engaged in the independent business of operating a movie theater for a short time. The mother is employed part time as a government statistics interviewer. The grandmother, a widow about 60 years of age, is employed as a domestic and resides nearby in a home outside the city of Cannon Falls.

We gather from the record that the minor son has had some difficulty in adjusting to the family life in his parents' home. His complaints are directed toward the father rather than the mother. He testified that his father has discouraged his interest in agriculture as a lifework, that the parents have disagreements, and that his father drinks. Since there is ample time for the father and son to work out any differences of opinion

they may have as to what the boy should do when he grows up, the trial court did not feel that that particular point of disagreement was serious. With reference to the boy's other complaints, the trial court apparently felt that they grew out of an adjustment problem which might be expected from a child's being exposed for the first time to the abrasive aspects inherent in family life after having known only the tranquil atmosphere of the grandmother's home in which he was the center of interest.

The court found "that although his father did drink, it was not to excess, that although they [the parents] did argue, it was not more than other married couples do, that although his father went out in the evening, it was to meetings or organizations to which he belonged; and that although the meetings were numerous, it was not a situation different from any other young man involved in community life and progress." The court also found that since the boy "moved in with his parents, his progress in school has continued satisfactorily, that except for appearing nervous at times, he has had no other problems, that he has done part time work at his father's theater and with his brother operated a pop corn stand on the street and discharged his duties with responsibility and acquired a self-confidence from these experiences." The court determined that it would be for the best interests of the boy to remain with the parents and not to move back into the grandmother's home. The court observed, however, that "because of Michael's love and affection for his grandmother * * * and his long association with her, the custody of the parents ought to be subject to liberal visitation between Michael and his grandmother."

It is elementary that in determining a child's custody the first and foremost consideration is the child's own welfare and best interests. If it can be shown that the best interests of the child are not served by parental custody, the court will place the child in the home of some other guardian. 14 Dunnell, Dig. (3 ed.) § 7297. In determining what the child's best interests are, courts will often be controlled by the child's wishes and will respect the preferences expressed by the child where its decision is intelligently made. State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927; State ex rel. Neib v. Krueger, 143 Minn. 149, 173 N. W. 414; Jones v. Jones, 242 Minn. 251, 64 N. W. (2d) 508; Gauthier

v. Walter, 110 Minn. 103, 124 N. W. 634; State ex rel. Rys v. Vorlicek, 229 Minn. 497, 40 N. W. (2d) 350.

In re Petition of Hohmann, 255 Minn. 165, 95 N. W. (2d) 643, involved the problem of conflicting claims between a divorced father and the stepfather of his children. The father claimed custody of his children, who had remained with the mother after her remarriage and had become part of a happy family in the home of the stepfather. After the mother's death, this court, contrary to the desires of the children, awarded custody to the surviving divorced husband as against the claims of the stepfather. That decision emphasizes that the natural right of the parent to custody of the child must not be overlooked.

In this case, the boy seems to be normal and might well be expected to get along well in either home. There is a strong underlying emotional pull here because of the great hurt which the widowed grandmother will suffer in the loss of custody of a child she has cared for since infancy. However, when the factors bearing on the welfare of the child are examined, it seems to us that there is sufficient evidence in the record to support the trial court's determination that the grandmother's interest should be subordinated to the right of the parents to the custody of their own child. Unlike many of the situations found in the authorities cited, where courts have refused to return custody of a minor child to divorced parents or to broken homes, we have here a situation where the family life is intact and the parents are asking that the child remain in a home where the environment is stable and the boy will have the advantages of growing up in a family with his parents and a brother and sister. Where the family life holds a fair promise of favorable care and treatment of the child, the natural parents should be given an opportunity to fulfill their desire and obligation to rear and guide the child. It is unnecessary for us to speculate on the unanswered question of why the parents permitted the child to remain with the grandmother for so many years without taking custody. Varying inferences could be drawn from this circumstance, and it is not necessary for us to speculate as to whether the parents abandoned the child on the one hand or whether the grandmother's possessive attitude on the other discouraged earlier action.

It is well established, however, that the trial court is vested with broad

discretion in awarding custody of a child, and that discretion will not be disturbed in the absence of circumstances indicating that the decision was arbitrary. 14 Dunnell, Dig. (3 ed.) § 7297. While we might well affirm a contrary decision, it would seem to us that there is sufficient evidence in the record here to support the trial court's determination. Since, under the facts in this case, the promise of the family influence is favorable to the welfare of the child, both in moral and material considerations, the evidence would not fairly warrant the court in depriving the parents of their natural right to the child's custody. See, Bennett v. Bennett, 277 Minn. 227, 152 N. W. (2d) 187.

Affirmed.