In the Matter of the
**WELFARE OF C.B.**

No. C9–85–1411.

Court of Appeals of Minnesota.

March 25, 1986.

Review Denied May 29, 1986.

Richard Varriano, Moorhead, for C.B.

Tom Olson, Clay Co. Atty., Moorhead, Paul Legler, Fargo, N.D., for Linda Iverson.

Bruce Ringstrom, Moorhead, for Ronald Brodell.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

C.B.'s father, Ronald Brodell, appeals from an order discharging C.B. from the custody and supervision of Clay County Social Services. We affirm.

## FACTS

In 1982 Ronald Brodell and Linda Iverson were divorced in North Dakota, and C.B. was placed in Brodell's custody. In October 1983 Brodell received a jail sentence for an aggravated DWI conviction, and upon release he entered inpatient chemical dependency treatment. C.B. was placed in temporary and voluntary foster care. In November 1983 Clay County petitioned to have C.B. declared dependent under Minn.Stat. § 260.015, subds. 6(b) and (d), based on allegations that Brodell had sexually abused C.B.

At the hearing on the dependency petition on November 16, 1983, Brodell admitted that C.B. was dependent and in need of special counseling and treatment. The court placed C.B. in the legal and physical custody of the Clay County Social Services Department and ordered a disposition study. In December 1983 the court ordered a study of Linda Iverson's home in Illinois. In January 1984 Brodell pleaded guilty to first-degree intrafamilial sexual abuse and was sentenced to prison for 113 months.

A short time later Iverson moved in Clay County for a change of custody under the Uniform Child Custody Jurisdiction Act, Minn.Stat. § 518A.01 *et. seq.* (1984). Brodell was served with the notice of motion and motion. The attorney representing him in the dependency action was present at the hearing. An assistant county attorney was also present. By order dated June 4, 1984, the court found that Brodell was unable to care for C.B. while incarcerated and that C.B.'s continued custody with Brodell would endanger C.B.'s health or impair his development. The court found that Iverson was well able to care for C.B. and the change in environment was in C.B.'s best interests. The court transferred C.B.'s physical custody to Iverson and retained legal custody in the county for an additional six months to assess the family's adjustment. The order states that after six months, "unless there is a further order of this court or another court of competent jurisdiction," Iverson shall have legal as well as physical custody of C.B.[1]

The first review hearing after physical custody was transferred to Iverson took place on February 11, 1985. The court continued physical custody with Iverson and legal custody with Clay County. An updated home study concluded that Iverson provided a satisfactory home for C.B. in

---

1. Family courts retain jurisdiction to modify custody subject to the final disposition of the juvenile court in dependency and neglect proceedings. *See In re Welfare of Hall,* 268 N.W.2d 418 (Minn.1978). In this matter, the same judge of the Clay County Court handled both the disposition of the dependency proceeding and the change of custody motion. The order giving Iverson physical custody of C.B. and retaining legal custody in the county was a blended custody decision under chapter 518A and a disposition under § 260.191, subd. 1.

Chicago, and the final reassessment report stated that C.B. was doing well and making good academic progress. By order dated June 21, 1985, the district court discharged C.B. from Clay County's custody and supervision and terminated the court's jurisdiction.

## ISSUE

Did the trial court abuse its discretion in terminating the dependency proceeding?

## ANALYSIS

 The county court found C.B. dependent while he was in Ronald Brodell's custody. C.B. was initially placed in foster care, and after the custody modification motion, physical custody was granted to Iverson. The court took testimony and made findings that this modification was in C.B.'s best interests. After further supervision showed that C.B. had adjusted well, the district court discharged the county's legal custody and terminated the court's jurisdiction, presumably on the basis that C.B. was no longer dependent.

Brodell argues that C.B. should remain in foster care until Brodell is released from prison. Brodell presented no evidence that C.B. continues to be dependent while in Iverson's custody. All of the evidence would support a finding that C.B. was no longer dependent. The trial court did not abuse its discretion in terminating the dependency action.[2] *See* Minn.Stat. § 260.-181, subd. 4.

 Brodell also argues that the trial court erred in failing to appoint a guardian ad litem for C.B. The court did appoint counsel to represent C.B., and under Minn. Stat. § 260.155, subd. 4(b)(a), the court may waive appointment of a guardian ad litem whenever counsel has been appointed. The record supports a conclusion that, although the attorney did not attend every hearing, he adequately represented C.B.'s interests. The record also shows consistent and care-

2. The order of June 21, 1985, made final, and therefore appealable, the county court's earlier decision to transfer C.B.'s legal and physical custody to Iverson. Brodell did not appeal the

ful consideration of the trial court, both to the needs of the child and the requests of Brodell.

## DECISION

The trial court did not abuse its discretion in discharging C.B. from the legal custody of the Clay County Social Services or in terminating its jurisdiction over the dependency action.

Affirmed.

custody decision on the merits, but seeks to argue it indirectly through the dependency action. We cannot review the custody decision collaterally.