**In re the CUSTODY OF N.M.O., Child.**

**No. C9–86–1211.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Becky Skinner Toevs, Messerli & Kramer, Minneapolis, for appellant.

Joseph Kaminsky, Marcy Harris, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

In this custody dispute between a stepparent and a natural parent, the stepparent questions whether the trial court erred in its application of the law and its refusal to conduct an evidentiary hearing or provide for a custody evaluation. We reverse and remand for an evidentiary hearing and findings under controlling law.

## FACTS

N.M.O. was born on December 20, 1976. Her parents, Mary and Odell Olson, had already separated at the time of N.M.O.'s birth, and were divorced in September 1977. Mary Olson was awarded sole custody of N.M.O., subject to Odell Olson's rights of reasonable visitation.

In 1980, when N.M.O. was three years old, Mary Olson met appellant Duane Bicek. In 1981, when N.M.O. was four, Bicek and Mary Olson moved into the same home and, in 1982, they married. N.M.O.'s half sister, Kristina, was born several years later. The four resided together as a family until February 1986.

On February 2, 1986, Mary Bicek and her daughter Kristina were killed in an accident. Mary Bicek's mother, Pearl Hallaway, immediately moved into the Bicek home to help Duane Bicek care for N.M.O. At the funeral, Odell Olson approached Bicek and said they must talk about custody. A meeting was set up at a third person's house to take place a few days later, for the purpose of giving custody of N.M.O. to Odell Olson. On the morning of the meeting, Olson was informed that Duane Bicek did not wish to have custody of N.M.O. changed.

On February 13, 1986, appellant Duane Bicek filed a motion requesting that the trial court grant him temporary custody of N.M.O. and asking the court to order a custody evaluation. On February 18, 1986, Odell Olson filed a motion requesting that the court order Duane Bicek to transfer custody of N.M.O. to Olson immediately.

Both parties submitted supporting affidavits. Duane Bicek stated that N.M.O. has never lived with her natural father Odell Olson and that Olson never visited N.M.O. during the first three years of N.M.O.'s life. Further, in the last six years, visitation has been sporadic and rare.

Appellant also presented numerous affidavits from Mary Bicek's family and friends indicating that Odell Olson had little interest in a relationship with N.M.O. during the early years of the child's life. These observers also said that Olson repeatedly physically abused Mary and that the marriage also suffered from problems related to Olson's alcohol use.

In her affidavit, Pearl Hallaway, N.M.O.'s maternal grandmother, indicated her support for Duane Bicek's motion and stated that an award of temporary custody to Duane Bicek would be in N.M.O.'s best interest. Hallaway stated that she currently lives with Bicek and N.M.O. and plans to live with them indefinitely. Hallaway stated she felt that N.M.O. should stay in her own environment, Duane Bicek's home, for the rest of the school year.

Odell Olson remarried in 1982. Both he and his new wife, Sue Olson, expressed their desire to have permanent custody of N.M.O. Sue Olson's affidavit indicates that Odell Olson has tried to establish a relationship with N.M.O. since the time of their marriage. Apparently these recent attempts met with some resistance from N.M.O.'s mother. Mary Bicek discouraged visitations, initially by limiting visits to N.M.O.'s home and then by limiting Olson's participation in significant events in N.M.O.'s life.

N.M.O. received psychological counseling immediately after her mother and sister died. The psychologist submitted a letter to the trial court stating that appellant had

been a psychological father to N.M.O. for the past six years and that the child was frightened about losing her stepfather. The psychologist further stated that N.M.O. has asked "repeatedly in [a] very desperate and panicked mood if she will have to leave Duane and live with her biological father; and she has stated in a very unambiguous way that she does not want to leave Duane." The psychologist recommended "in the strongest possible way that no change in her current custody arrangement be made at the present time."

Appellant claimed two bases that would support an order granting his motion for physical custody: N.M.O.'s best interests and evidence that Odell Olson had abandoned his child. The trial court denied appellant's motion for temporary custody and made no provision for a custody evaluation. The court granted respondent's motion and ordered Duane Bicek to transfer physical custody of N.M.O. to Odell Olson. The court's order states that upon the death of the custodial parent the custody of the child "automatically" shifts to the surviving parent unless the surviving parent is shown to be unfit. The court made its decision solely on the basis of the affidavits submitted and arguments by counsel.

## ISSUES

1. Did the trial court erroneously apply the law in deciding which of two parties should have custody of the child?

2. Did the trial court err in refusing a custody evaluation and evidentiary hearing?

## ANALYSIS

### I.

A. Although the trial court has wide discretion in making a custody determination, we must reverse where the court makes an erroneous application of law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn. 1985). The trial court confined its attention to the fitness of Odell Olson and determined there was no showing that respondent would not be a caring and loving parent to N.M.O. The trial court has not correctly applied the controlling law.

B. When deciding custody disputes between a parent and third person, the Minnesota Supreme Court has employed two basic principles. The first is the rule of law announced by the trial court: A parent is "entitled to custody of her children unless it clearly appears that she is unfit or has abandoned her right to custody, or unless there are some extraordinary circumstances which would require that she be deprived of custody." *Wallin v. Wallin,* 290 Minn. 261, 264, 187 N.W.2d 627, 629 (1971). *See also In re Welfare of A.R.W. and Y.W.C.,* 268 N.W.2d 414 (Minn. 1978), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978) (children removed from home following dependency and neglect proceeding were returned to natural parent upon showing of rehabilitation and absent showing that return would be "seriously detrimental" to the children's interests); *State ex rel. Olson v. Sorenson,* 208 Minn. 226, 293 N.W. 241 (1940) (grandparents who raised nine-year old child since birth did not overcome presumption that parents are fit and proper persons to have custody of child); *State ex rel. Vik v. Sivertson,* 194 Minn. 380, 260 N.W. 522 (1935) (parent entitled to custody of twelve-year old child raised by aunt and uncle upon finding that either party would provide good care); *State ex rel. Herniman v. Markson,* 187 Minn. 176, 244 N.W. 687 (1932) (in determining the custodial right of a natural parent, the law recognizes that the call of blood relationship is normally a promise of right treatment that is not to be disregarded); *State ex rel. Platzer v. Beardsley,* 149 Minn. 435, 183 N.W. 956 (1921) (the ties between parent and child should not be severed except for "grave and weighty reasons"); *State ex rel. Lehman v. Martin,* 95 Minn. 121, 103 N.W. 888 (1905) (natural parent entitled to return of custody unless grandparent meets burden to establish parent's unfitness); *Matter of Welfare of P.L.C. and D.L.C.,* 384 N.W.2d 222 (Minn.Ct.App.1986) (child returned to father based on the "presumption of paren-

tal fitness" and lack of "grave reasons" that would justify denial of custody).

The Minnesota Supreme Court has established with equal clarity a second and sometimes conflicting principle governing custody disputes between a parent and a third person. The law requires that any custody determination be consistent with the best interests of the child. *Wallin*, 290 Minn. at 264, 187 N.W.2d at 629. *See also Molto v. Molto*, 242 Minn. 112, 64 N.W.2d 154 (1954) (court awarded aunt and uncle custody upon finding the child's welfare would be best served by such placement); *State ex rel. Rys v. Vorlicek*, 229 Minn. 497, 40 N.W.2d 350 (1949) (parent who previously failed to recognize or support child denied return of child who desired to remain with aunt); *State ex rel. Ashcroft v. Jensen*, 214 Minn. 193, 7 N.W.2d 393 (1943) (where desired parent and child relationship did not exist, court found no overpowering reasons requiring removal of six-year old child from custody of couple unrelated to her); *State ex rel. Feeley v. Williams*, 176 Minn. 193, 222 N.W. 927 (1929) (court placed "great weight" on the child's expressed preference in denying parent custody of twelve-year old child); *State ex rel. Lund v. Anderson*, 175 Minn. 518, 221 N.W. 868 (1928) (although father not shown to be unfit, he was denied return of children from grandparents who demonstrated ability to meet special needs of children); *State ex rel. Neib· v. Krueger*, 143 Minn. 149, 173 N.W. 414 (1919) (parent denied custody where grandparent cared for child for almost fourteen years and child adverse to leaving); *State ex rel. Larson v. Halverson*, 127 Minn. 387, 149 N.W. 664 (1914) (grandparents retained custody of five-year old child in poor health because "the welfare of the child * * * is paramount to the natural paternal right"); *Gauthier v. Walter*, 110 Minn. 103, 124 N.W. 634 (1910) (return to parent refused when it conflicts with strong feelings of child favoring persons who cared for child over twelve years); *State ex rel. Anderson v. Anderson*, 89 Minn. 198, 94 N.W. 681 (1903) (aunt and uncle retained custody of children indefinitely as temporary guardi-

ans, though parent not found an "unsuitable person"); *Tubwon v. Weisberg*, 394 N.W.2d 601 (Minn.Ct.App.1986) (unfitness of natural parent not so grave to deny custody, but the best interests of the child compelled custody in favor of third party who acted as the child's parent since birth). The statute governing custody disputes also requires the court to determine the best interests of the child. Minn.Stat. § 257.025 (1984).

■ As between the two doctrines, the Minnesota Supreme Court has made it clear that one supersedes the other. The best interest of the child is always the overriding consideration in custody decisions. *Wallin*, 290 Minn. at 265, 187 N.W.2d at 630. This was recognized in numerous prior decisions, including those that awarded custody to the natural parents. *See, e.g., State ex rel. Waslie v. Waslie*, 277 Minn. 446, 448, 152 N.W.2d 755, 757 (1967); *Vik*, 194 Minn. at 381, 260 N.W. at 523; *Herniman*, 187 Minn. at 177, 244 N.W. at 688. The decisions showing a preference for parents in these disputes are founded on the interests of the child, based on a premise that parental care is normally beneficial for the child. Thus, the preference cannot be minimized as an interest competing with the child's interest. Likewise, the parental claim for custody cannot be unduly enlarged but is dominant only when it coincides with other evident interests of the child.

In sum, the lower court recognized only one of two principles to be considered. The rule of law it overlooked is the superior one: "The principle that the custody of young children is ordinarily best vested in the [parent] * * * is distinctly subordinate to the controlling principle that the overriding consideration in custody proceedings is the child's welfare." *Wallin*, 290 Minn. at 265, 187 N.W.2d at 630.

■ Because the trial court applied the wrong standard of law, it made no findings regarding the best interests of the child. Previous cases establish the factors the court must consider. *See, e.g., Waslie*, 277

Minn. at 448, 152 N.W.2d at 757 (child's preference is accorded great weight); *Bjerke v. Wilcox,* 384 N.W.2d 250, 252 n. 2 (Minn.Ct.App.1986) (continuity of care may be in the best interests of the child). Similarly, the legislature has specified factors courts must consider and evaluate when determining the best interests of the child. *See* Minn.Stat. § 257.025 (1984). We remand the case for that determination. On remand, the trial court must consider the factors established by precedent and statute, and provide findings to demonstrate the basis for its decision. *See Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986) (findings are necessary to demonstrate court considered statutory factors); *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 81–82, 249 N.W.2d 168, 171–72 (1976) (findings assure parties this important decision was fairly and carefully considered); *Wallin,* 290 Minn. at 267, 187 N.W.2d at 631 (findings made in the exercise of broad discretion must be set forth with a high degree of particularity if appellate review is to be meaningful).

## II.

The trial court did not rule on Duane Bicek's motion for a custody evaluation and evidentiary hearing. However, the court's order transferring physical custody of N.M.O. to respondent implicitly denied appellant's motions. The trial court based its order on affidavits and the argument of counsel. At oral arguments before this court, appellant stated no testimony was taken and the change in custody was ordered only one week after appellant brought his motion. Respondent conceded he was not certain whether the judge interviewed the child prior to issuing its order.

The trial court erred in failing to hold an evidentiary hearing. This is indicated by precedent involving custody disputes between a natural parent and a third person.

"In view of the serious consequences of the decision rendered in a custody case, it is necessary that such a decision be made only after thorough investigation of the facts surrounding the case." *Wallin,* 290 Minn. at 268, 187 N.W.2d at 631.

We find additional mandate for this decision in cases involving custody disputes between natural parents.[1] An evidentiary hearing is required when the moving party establishes a prima facie case for a change in custody. *See Auge v. Auge,* 334 N.W.2d 393, 396 (Minn.1983) (denial of custodial parent's request to remove child from state was in fact a modification of custody and therefore an evidentiary hearing was required if non-custodial parent makes prima facie showing against removal); *Nice-Peterson v. Nice-Peterson,* 310 N.W.2d 471, 472 (Minn.1981) (evidentiary hearing required where moving party makes prima facie showing of substantial change in circumstances that could support custody change). The trial court's determination of N.M.O.'s future custody was a change in the judgment provision on custody and was a decision of the magnitude of those considered in *Auge* and *Nice-Peterson.* The effect of the order was to remove N.M.O., then age nine, from the place she believed to be her home and from the care of the person she knew as "dad" for the last six years of her life.

We conclude appellant was entitled to an evidentiary hearing. Appellant presented evidence that would support a finding that custody in favor of the stepparent would serve the best interests of the child. Appellant was the child's caretaker for the past six years, the nine-year old child expressed a strong preference for remaining with appellant, and the psychologist working with the child recommended without qualification that the child remain with appellant. Given these facts, the trial

1. In both types of disputes, those between natural parents and those between a natural parent and a third person, the court must determine the best interests of the child. *See* Minn.Stat. § 518.17, subd. 3 (1984) (when determining custody in a marriage dissolution proceeding, "the court shall consider the best interests of the child"); Minn.Stat. § 257.025 (1984) ("In any proceeding where two or more parties seek custody of a child the court shall determine the best interests of the child").

court was unable to determine whether custody in favor of the natural father would serve the best interests of the child without an evidentiary hearing. Whether a custody evaluation is utilized is discretionary with the trial court.

### DECISION

The trial court's custody decision is reversed and the case is remanded for an evidentiary hearing on appellant's motion. The trial court must set aside other judicial business to give expedited attention to the case on remand. We recognize the trial court order granting custody in favor of the respondent has remained in effect while this appeal was pending. On remand, the assessment of the best interests of the child cannot look exclusively at matters present at the time this case was first decided, but must also take into account subsequent events.

Reversed and remanded.