## In re the CUSTODY OF E.A.Q.D. and T.L.D.

### Avis and John SIMPSON, Petitioners, Appellants,

v.

### Broderick Lee WALKER, Edward Louis Adams, Mary Dabney, Ramsey County Community Human Services Department, intervenor, Respondents.

No. C3–86–1365.

Court of Appeals of Minnesota.

May 5, 1987.

Nancy Zalusky Berg, T. Keith Cambre, Minneapolis, for appellants.

Broderick Lee Walker, pro se.

Edward Louis Adams, pro se.

Thomas M. Scott, Eagan, for Dabney.

Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for Ramsey County Community Human Services Dept., intervenor.

J. Thomas Mott, for guardian ad litem Lisa Brooke.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE,* JJ.

## OPINION

STONE, Judge.

This appeal is from an order of the family court dismissing a petition by appellants John and Avis Simpson for permanent custody of two minor children. A statement of the proceedings filed pursuant to Minn. R.Civ.App.P. 110.03 indicates that the order is appealable because it determines the action and prevent[s] a judgment from which an appeal might be taken. *See* Minn.R.Civ. App.P. 103.03(e).

Appellate briefs have been filed by the guardian ad litem, who joins with the Simpsons in arguing that the petition was improperly dismissed, and by respondent

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

and intervenor in this action, Ramsey County Community Human Services (RCCHS). Respondent Mary Dabney did not file a brief, but her attorney appeared at oral arguments. We reverse and remand with instructions that the Simpsons' petition be transferred to juvenile court.

## FACTS

T.L.D. was born in 1977 and E.A.Q.D. was born in 1980. In June 1985 Arnilla Campbell, their natural mother and custodial parent, died. At the time of Campbell's death, the two children, who are black, were residing with the Simpsons, who are a white married couple. The evidence suggests that the children have been living with the Simpsons almost continuously since late 1980 or early 1981.

Following Campbell's death, the Simpsons filed a private dependency petition in juvenile court. The petition alleged that the children were dependent as to respondent Broderick Walker (who had been adjudicated T.L.D.'s father in a default proceeding in 1982), respondent Edward Adams (who has since acknowledged paternity of E.A.Q.D.), and respondent Mary Dabney (the children's maternal grandmother).

On September 5, 1985, legal custody of the children was transferred to RCCHS, with placement in the Simpson home. On October 30, the Simpsons sought dismissal of their dependency petition. Entry of the dismissal was stayed to allow RCCHS an opportunity to file its own petition.

On November 4, 1985, the Simpsons filed a petition in family court under Minn.Stat. § 518.156 (1984) seeking "sole legal and physical custody" of the children. At that time, the Simpsons also obtained an ex parte order granting them temporary physical custody of the children.

On November 6, 1985, RCCHS filed a neglect and dependency petition in juvenile court. In January 1986, the children were found to be neglected and dependent as to both fathers. Temporary legal custody was granted to RCCHS "with placement subject to the existing lawful court orders specifically placing the children in the custody of Avis and John Simpson pending Family Court determination of whatever right to legal custody they may have."

In April 1986, RCCHS was allowed to intervene in the family court matter. Following a hearing in May 1986, the family court concluded "[t]hat the statutory scheme set forth in Chapter 260 of the Minnesota Statutes shall govern this action," and granted Dabney's motion to dismiss the Simpsons' petition. This appeal followed.

Proceedings have continued in juvenile court before the same district court judge who dismissed the petition in family court. Following a hearing in September 1986, a dispositional order and case plan were filed. This order continues temporary placement with the Simpsons, pending contemplated reunifications of the children with their fathers or with Dabney.

## ISSUE

Does the exercise of jurisdiction by the juvenile court over children alleged to be neglected or dependent mandate dismissal of a petition by third parties seeking permanent custody?

## ANALYSIS

In dismissing the Simpsons' petition, the family court reasoned that "in determining legal custody, the provisions in Chapter 260 clearly apply." The court further explained its decision:

The statutory scheme in Chapter 260 is comprehensive and detailed. The statutes mandate specific procedures for placement of children when the state intervenes and an adjudication of dependency and neglect is made. As the county argues, the statutory scheme is designed to deal with the existing situation. The Simpsons are unrelated, are not of the same racial or ethnic heritage, nor are they an operating or a licensed residential facility. As respondent Mary Dabney argues, to permit a private party to seek permanent custody under Chapter 518 after state intervention and a

determination of dependency, usurps the entire Juvenile Court process.

Moreover, application of the two statutes lends itself to an irreconcilable conflict.

On appeal, the Simpsons and the guardian ad litem argue that dismissal of the petition was unnecessary. We agree. Proceedings for permanent custody involve different issues and may be maintained concurrently with neglect and dependency proceedings. *In Re Welfare of Hall,* 268 N.W.2d 418, 420 (Minn.1978). *See In Re Welfare of C.B.,* 383 N.W.2d 732, 733 n. 1 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. May 29, 1986). Chapter 260 provides for temporary placement of children. Prior to termination of parental rights, legal custody can be awarded under chapter 260 only to the county welfare board or a child placing agency. Minn.Stat. § 260.-191, subd. 1(b) (1984); Minn.Stat. § 260.-242, subd. 1(c) (1984) (following termination of parental rights, legal custody may be transferred to individual "willing and capable of assuming the appropriate duties and responsibilities to the child"). At this point, the Simpsons merely seek permanent custody of the children, not termination of the fathers' parental rights. These two concepts are not mutually exclusive; a third party could be awarded permanent legal and physical custody of a child subject to reasonable visitation by the natural parents or other relatives.

RCCHS concedes that concurrent jurisdiction exists between family court and juvenile court, but nonetheless argues for the first time on appeal that dismissal of the petition was proper because the Simpsons do not have standing under Minn.Stat. § 518.156 (1984). An objection to a party's standing goes to the existence of a cause of action, which is essential to the court's exercise of jurisdiction. Such an objection may thus be raised at any time. *In Re Welfare of Mullins,* 298 N.W.2d 56, 61 n. 7 (Minn.1980).

Enacted in 1978, Minn.Stat. § 518.156 literally provides that a child custody proceeding is commenced by a parent or "[b]y a person other than a parent * * *." *See*

1978 Minn. Laws ch. 772 § 33. Given this broad language, we cannot conclude that the Simpsons (who have had de facto custody of these children for the past six or seven years and who, in all probability, have become their primary caretakers) lack standing to petition for permanent custody.

Even if we were to conclude that this type of a petition is not authorized by chapter 518, it appears that the Simpsons could have sought permanent custody by filing a substantially similar petition under Minn. Stat. § 257.025 (1984). *See In Re Custody of N.M.O.,* 399 N.W.2d 700, 704 n. 1 (Minn. Ct.App.1987) (suggests that custody disputes between natural parents appropriately commenced under chapter 518, while custody disputes between a natural parent and a third person more appropriately commenced under Minn.Stat. § 257.025). We refuse to uphold dismissal of this petition merely because it was brought under Minn. Stat. § 518.156 and not under Minn.Stat. § 257.025. To do so would exalt form over substance.

Although we conclude that dismissal of the petition was unnecessary in this case, we understand the family court's concern over the conflict and confusion created by the existence of two separate proceedings in different courts. Dismissal of the petition may have served to economize judicial resources and efforts into one proceeding, but it will also preclude the Simpsons from being heard on their petition for permanent custody of these children. We therefore remand the matter to allow transfer and continuation of the Simpsons' petition in juvenile court. Although the purposes of chapter 260 (especially those seeking reunification with the family and preservation of racial heritage) may at times appear inconsistent with the Simpsons' desire to obtain permanent custody, the children's best interests remain the primary consideration. *In Re Welfare of J.J.B.,* 390 N.W.2d 274, 279 (Minn.1986) (best interest of the child is primary consideration in various child placement procedures, "whether temporary or permanent"); *N.M.O.,* 399 N.W.2d at 703 (best interest of the child is overriding consideration, even in dispute between nat-

ural parent and a third person); *Tubwon v. Weisberg,* 394 N.W.2d 601; 604 (Minn.Ct. App.1986) (child's best interest supports grant of custody to third party who acted as child's parent since birth, given evidence of psychological bonding with that third party and evidence of natural mother's unfitness).

We are not unmindful of the procedural dilemma confronting the trial court, but the competing interests of the adult litigants and the best interests of the children will be best served by the joinder of the contested issues in one court at one time.

### DECISION

Dismissal of the Simpsons' petition for custody is reversed, and the matter is remanded with instructions to transfer the Simpsons' petition to juvenile court, and if necessary to allow amendment of the petition to conform with Minn.Stat. § 257.025.

Reversed and remanded.