**In re the Marriage of Mary D. WEST-PHAL, n/k/a Mary D. Tasler, Petitioner, Respondent,**

v.

**Scott Gerald WESTPHAL, Respondent,**

and

**Gerald Westphal, et al., Intervenors, Appellants.**

No. C3–90–138.

Court of Appeals of Minnesota.

June 12, 1990.

---

Ragnhild A. Westby, St. Paul, for In re the Marriage of Mary D. Westphal, n/k/a Mary D. Tasler, petitioner.

Mary Wilmes, St. Paul, for Scott Gerald Westphal.

Linda Ojala, Minneapolis, for Gerald Westphal, et al., intervenors.

Considered and decided by PARKER, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

CRIPPEN, Judge.

In early 1988, the parents of J.M.W., now age 8, were engaged in litigation to review the court's temporary placement of the child with her mother. Appellants, the child's paternal grandparents, intervened, claiming it would be in the child's best interests to be in their custody. Following completion of various examinations and reports, the trial court placed custody of the child with the mother and dismissed the petition for intervention. The court refused to hold an evidentiary hearing on appellants' claim, finding that they did not show the child's physical or emotional health was endangered. We affirm.

## FACTS

The marriage of Scott and Mary Westphal was dissolved in 1983, nineteen months after their child's birth. The court established joint legal custody of the child and placed physical custody with the mother. In June 1985, after allegations that the mother's new spouse was sexually abusing the child and that the mother was failing to protect the child, the court placed legal and physical custody of the child with the father; this placement was confirmed in a May 1986 order. In September 1987, the court returned custody to the mother after she and the child's paternal grandmother reported the father was sexually abusing the child. By this time, the mother had separated from her second husband. The court established the mother's custody in a temporary domestic abuse proceeding order dated September 24, 1987. In Decem-

ber 1987, the mother moved for formal permanent custody.

In March 1988, the child's paternal grandparents moved the court for permission to intervene in the custody proceedings. The court granted the petition and delayed the custody hearing to allow examinations and reports. The father withdrew from the action in May 1988. In July 1989, the mother moved for "summary judgment." Five months later, the trial court granted permanent custody of the child to the mother and dismissed appellant's claims without an evidentiary hearing. The court based the order on its conclusion that insufficient evidence was shown to permit a finding the child was physically or emotionally endangered by living with her mother. In an accompanying memo, the court stated,

> Evidence has not been presented sufficient to sustain either a preliminary finding or a prima facie case that [custody with the mother] is no longer consistent with the best interests of the child. Neither is there evidence to sustain a prima facie belief that the [mother] is now unfit to have the child's custody.

Appellants challenge this order.

### ISSUES

1. Did the court err by concluding that appellants' entitlement to an evidentiary hearing depended upon a showing that the child's health was endangered?

2. Does the record support the court's evaluation of the evidence proposed by appellants?

### ANALYSIS

Under *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 472 (Minn.1981), a trial court should not hold an evidentiary hearing in a custody modification proceeding unless the movant makes a prima facie showing that it could satisfy the applicable standard. This showing is made when "the accompanying affidavits set forth sufficient justification, if the facts alleged therein are true, for the modification." *Id.* The parties dispute both the applicable standard for this proceeding and whether

appellants produced adequate evidence to hold an evidentiary hearing under any standard.

### 1. Applicable Standard.

Minn.Stat. § 518.18 (1988) governs modifications of custody orders. Under section 518.18(d), a trial court must make specific findings before modifying such an order. The court must find that a change has occurred in the child's circumstances since the prior order and that modification is necessary to serve the child's best interests. *Id.* Unless the claimant presently cares for the child, or modification is agreeable to the present custodian, the statute further requires the court to retain the current custodian unless the child's present environment endangers the child's physical or emotional health and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child. *Id.* The statute is aimed at ensuring that the court-approved custodial status of children remains stable. The statute applies to all motions to modify custody, evidently including those brought by nonparents, and nothing in the language suggests otherwise.

Appellants argue this standard does not apply here, contending that the applicable standard is the multifaceted best-interests test under Minn.Stat. § 257.025 (1988). They rely on cases where the court permitted a custody placement with a nonparent to serve the child's best interest. *See Wallin v. Wallin*, 290 Minn. 261, 264, 187 N.W.2d 627, 629 (1971); *In re Custody of N.M.O.*, 399 N.W.2d 700, 703 (Minn.App. 1987). They also argue that, on these facts, they need not make a showing of endangerment under section 518.18(d) because the court found in May 1986 that custody with the mother endangered the child.

We conclude, according to the plain meaning of the statutory language, that section 518.18 applies here. Section 257.-025 applies in situations where there is no prior order establishing custody of the child. Here, the court gave the mother custody in its September 1987 order, and

that action is a custody order for purposes of section 518.18. *See Nice–Peterson,* 310 N.W.2d at 472 (court determines modification from circumstances arising since the "original or amended custody order"); *see also Morey v. Peppin,* 375 N.W.2d 19, 24–25 (Minn.1985) (order determining paternity construed as custody order; new motion for custody a request for modification to be treated under section 518.18).

The application of section 518.18 to these facts harmonizes with caselaw concerning the custodial rights of nonparents. The *Wallin* court identified two basic doctrines in determining custody between a parent and another custody claimant. First, the nonparent may show the natural parent is unfit to have custody. *Wallin,* 290 Minn. at 264, 187 N.W.2d at 629. *See also Durkin v. Hinich,* 442 N.W.2d 148, 152–53 (Minn.1989) (presumption favoring natural parent may be overturned only if "grave and weighty" reasons exist). Such a showing corresponds to the requirement in section 518.18(d)(iii) that the court find the current custody endangers the child. Second, the *Wallin* court recognized that the "overriding consideration" in deciding custody is the best interests of the child. *Wallin,* 290 Minn. at 265, 187 N.W.2d at 630. This analysis recognizes that certain extraordinary situations may exist in which the child's best interests require placement with a nonparent, and it has been applied in situations in which the court legitimizes a de facto custody arrangement and allows the nonparent to retain custody. *See Durkin,* 442 N.W.2d at 153; *N.M.O.,* 399 N.W.2d at 703–04. Section 518.18(d)(ii), which allows modification in favor of a noncustodian where the child has been integrated into the movant's family with the consent of the custodian, reflects these situations. Section 518.18 incorporates the *Wallin* strands into its required findings. Both the caselaw and the statute reflect a settled policy view that stability of custody is usually in the child's best interest. *Pikula v. Pikula,* 374 N.W.2d 705, 711–12 (Minn.1985). Thus, the *Wallin* recognition of the importance of considering the child's best interest does not allow a court to remove custody from a parent to nonpar-

ents based only on the application of the best interest standard. The court must find that the child's custody endangers the child.

■ The May 1986 finding that custody with the mother endangered the child does not constitute a finding of endangerment *for this action.* The proceeding here follows the September 1987 order premised on dangerous acts by the father and approving custody with the mother. The 1987 order is the prior order for purposes of section 518.18(d).

2. Prima Facie Showing.

■ Appellants also argue they have demonstrated a prima facie showing under the section 518.18(d) standard. The examination reports and other evidence show (1) that the mother demonstrated herself to be an unfit parent in 1986 by failing to protect her child from her spouse at the time, and (2) that the experts who have currently evaluated the mother suggest she is prone to manipulation and denial and that these patterns of behavior rarely change. Accepting the truth of this evidence, the record lacks any showing that the mother has been deficient in her care of the child since September 1987. *See In re Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980) (evidence of unfitness as a parent must address conditions at the time of hearing); *In re Welfare of M.G.,* 407 N.W.2d 118, 120 (Minn.App.1987) (same). The fact that the mother has apparently cut off the grandparents from contact with the child is a best interest consideration, but there is no evidence this apparent mistake has endangered the child's welfare. *See* Minn.Stat. 257.022, subd. 2a (1988) (grandparents with whom child has resided more than one year may petition for right to visit child).

More important, the evidence is undisputed that the child is now integrated into the home of the mother and her new spouse and would be hurt by another change. Appellants have offered no evidence which would show that any of the mother's disabilities outweigh the danger of yet another drastic change in the child's life. *See*

**230**

Minn.Stat. § 518.18(d) (danger of placement must exceed danger of change).

The evidence of record was correctly assessed by the trial court.

Affirmed.