**In re the CUSTODY OF M.A.L., a minor child.**

**No. CX–89–2222.**

Court of Appeals of Minnesota.

June 19, 1990.

---

Harold R. Finn, Finn & Mattson, Walker, for appellant.

Graham Mish Butler, Brooklyn Center, for respondents.

Leona Lyons, Laporte, Guardian Ad Litem.

Deborah Randolph, Minneapolis, Guardian Ad Litem.

Considered and decided by FOLEY, P.J., and KALITOWSKI and SCHUMACHER, JJ.

## OPINION

FOLEY, Judge.

This is a challenge to a custody award under Minn.Stat. § 518.156 (1988). The mother of the minor child is deceased and there has been no adjudication of paternity. After the mother's death, the maternal grandfather was awarded custody. A maternal step-aunt now appeals an award of permanent custody to a couple who cared for the child at the request of the maternal grandfather prior to his death. The step-aunt contends the trial court improperly used a best interests of the child standard rather than statutory preferences for place-

ment of a child in need of protection. We affirm.

## FACTS

M.A.L. was born on October 3, 1987 to T.M.L., who was then 14–years–old. T.M.L. died on April 6, 1988. When T.M.L. was alive, she and M.A.L. alternated between living with T.M.L.'s mother, Delores, in Minneapolis and T.M.L.'s father, Guy, in Cass Lake. Delores and Guy are divorced. After T.M.L. died, M.A.L. lived with Guy.

In an action in Cass County, Guy was given custody of M.A.L. Guy sent M.A.L. to live with Joline and David Cebula in the Minneapolis–St. Paul metropolitan area in November 1988.

Joline is the niece of a longtime family friend who presently has a significant relationship with Delores and was a close friend of Guy. Guy and Delores had known Joline while she was growing up.

The Cebulas lived near Delores, and Delores visited them and M.A.L. several times a week. Guy maintained frequent contact with the Cebulas and Delores. M.A.L.'s maternal uncle also lives in the area, as does the sister of the appellant maternal step-aunt who is seeking custody.

The trial court found Guy had agreed to cooperate in adoption proceedings the Cebulas intended to start. The Cebulas had adoption papers drafted but did not proceed when they learned of a paternity action initiated by a putative father in Hennepin County. That matter was continued because the putative father never paid for the results of the paternity test.

The trial court found Guy's attorney wrote to the Cebulas' attorney withdrawing consent to the adoption and seeking return of M.A.L. because Guy's attorney thought the adoption was compromised by the paternity action. Nonetheless, the trial court found, Guy still thought the Cebulas should adopt M.A.L.

Guy died in December 1988, and his daughter and appellant, who lives in Cass County, began attempts to get custody of M.A.L. The Cebulas filed a cross petition under Minn.Stat. ch. 518. Delores, who is not appellant's mother but is M.A.L.'s maternal grandmother, sided with the Cebulas in their attempts to get custody.

The trial court found M.A.L. was not enrolled in nor eligible for enrollment in an Indian tribe. Delores has no Indian blood, but Guy was an enrolled member of the Minnesota Chippewa Indian Tribe. Appellant is also enrolled in the Minnesota Chippewa Indian Tribe. The Cebulas are not of Indian blood.

The trial court found appellant was not a regular caretaker of M.A.L. when Guy had custody and did not have a close relationship with M.A.L. at that time. Additionally, the trial court found appellant did not have a close relationship with M.A.L. when M.A.L.'s mother was alive.

After a temporary hearing in Cass County on March 7, 1989, appellant and the Cebulas were given joint temporary custody, with M.A.L. shuttled between the two homes. The trial court asked a guardian ad litem appointed in the Hennepin County paternity action to continue as a guardian ad litem in the custody action and also appointed a co-guardian ad litem from Cass County. Studies of the two homes were ordered.

The county was asked to investigate whether a petition to declare M.A.L. a child in need of protection should be filed. The county declined to file one.

The trial court found the Cebulas and appellant to have substantially equal economic resources. The home studies showed the homes to be very similar. When M.A.L. stayed with appellant, she was cared for mostly by a babysitter. At the Cebulas, she was cared for either by Joline or David. Joline does not work outside the home. David works a night shift and is available for M.A.L. during the days.

The matter was tried on June 12, 1989, and, by order of September 18, 1989, the trial court awarded permanent custody to the Cebulas. This appeal followed.

## ISSUE

In awarding custody, did the trial court err in applying a best interests of the child

standard rather than employing statutory preferences for placing children in need of protection?

## ANALYSIS

Appellant did not indicate the statutory basis for her petition for custody. The Cebulas based their cross-petition on Minn. Stat. § 518.156 (1988).

Minn.Stat. § 518.156, subd. 1(b) (1988) authorizes a "person other than a parent" to petition for custody. Such a petition by a party who is not a relative of a minor child has been countenanced by the supreme court. *See Durkin v. Hinich*, 442 N.W.2d 148 (Minn.1989).

A "best interests of the child" standard is used in custody determinations under Minn.Stat. § 518.156. *See* Minn.Stat. § 518.17 (1988). Appellant alleges, however, that the trial court erred in failing to employ preferences for placements of children in need of protection under Minn.Stat. ch. 260.

Those preferences are that when a court with juvenile court jurisdiction places a child, unless there is good cause to the contrary, it must place the child in the custody of an individual (a) who is a relative, unless it would be detrimental to the child or a relative is not available, (b) who is of the same ethnic heritage as the child, or (c) who knows and appreciates the child's ethnic heritage, in that order of preference. Minn.Stat. § 260.181, subd. 3 (1988); *see also*, Minn.Stat. § 259.28, subd. 2 (1988) (similar preferences for adoption placements).

We do not agree with appellant that it is clear M.A.L. is a child in need of protection as defined by Minn.Stat. § 260.015, subd. 2a(1). That statute provides a child is in need of protection if the child is "abandoned or without parent, guardian, or *custodian*." Minn.Stat. § 260.015, subd. 2a(1) (1988) (emphasis added). With paternity not having been adjudicated, M.A.L. was without a parent or guardian, or at least an adjudicated parent. A "custodian" is someone "who is under a legal obligation to provide care and support for a minor *or who is in fact providing care and support*

*for a minor."* Minn.Stat. § 260.015, subd. 14 (1988) (emphasis added). There is no dispute the Cebulas and appellant were providing care and support for M.A.L.

Appellant also argues she should have been given preference in the court's award of custody because she is a relative. We do not now decide whether the statutory preferences would favor custody in appellant over the Cebulas. We do note, however, that the Cebulas might qualify as relatives under the statutory preferences. A " 'relative' includes * * * important friends with whom the child has resided or had significant contact." Minn.Stat. § 260.181, subd. 3 (1988).

A district court can consolidate custody petitions under Minn.Stat. ch. 518 and juvenile court petitions under Minn.Stat. ch. 260. *Durkin,* 442 N.W.2d at 150. Appellant contends the trial court, having the authority to hear both petitions, erred in not holding M.A.L. to be a child in need of protection, and, therefore, the trial court erred in not applying the above preferences.

■ The trial court ordered the county to investigate whether such a petition should be filed, and the county declined to file a petition. Additionally, appellant herself did not bring a petition to have M.A.L. declared a child in need of protection. Furthermore, we find it far from clear M.A.L. is a child in need of protection within the meaning of Minn.Stat. § 260.015, subd. 2a(1). In the absence of a petition by either the county or appellant and the failure of appellant to support her verbal request by legal argument at trial, we find it was not error for the trial court to refrain from declaring M.A.L. to be a child in need of protection.

■ Appellant also argues the state policy to give consideration to a child's ethnic heritage should apply equally to actions under ch. 518 as to actions concerning children in need of protection. The legislature has seen fit to make such a consideration part of the factors used in evaluating the best interests of the child under ch. 518. *See* Minn.Stat. § 518.17, subd. 1(h)–(i)

(1988); *Tubwon v. Weisberg,* 394 N.W.2d 601, 604 (Minn.App.1986) (trial court gave due weight to children's racial and cultural needs in action under ch. 518). If the legislature had wanted it to be the controlling factor, it could have so provided.

■ The statutory preferences contemplate the insertion of the state into parent-child and family relations for the protection of the child. In such a situation, the legislature has indicated the policy of the state for placements. Where, as here, the state has not stepped in, the custody dispute is more properly seen as a dispute between members of the child's extended family. In that regard, we note the legislature has provided that a parent's explicit request the placement preferences not be followed shall be honored by the court "consistent with the best interests of the child." *See* Minn.Stat. § 260.181, subd. 3; Minn.Stat. § 259.28, subd. 2.

While appellant casts the Cebulas as strangers to M.A.L., Joline is not a stranger to M.A.L.'s family. She is a niece of a close family friend and was known by the family while growing up. M.A.L.'s grandfather wanted the Cebulas to have custody when he was alive, and M.A.L.'s grandmother still wants them to have custody.

We are not persuaded by appellant's claim the Cebulas have succeeded in evading statutory regulation of adoption. The award of custody may put them in a better position if they renew adoption proceedings. Such proceedings are not before this court, however. Nor does it appear M.A.L. was wrongfully placed with the Cebulas by Guy. The Cebulas had adoption papers drafted and did not proceed only because the paternity action was commenced. There is no evidence they were attempting to evade the law.

We are mindful of the recent decision of this court dealing with the Indian Child Welfare Act. *See In re the Matter of B.W.,* 454 N.W.2d 437 (Minn.App.1990). As noted in that case, the act was intended to engender recognition of " 'tribal relations of Indian people and the cultural and social standards * * * in Indian communities.' " *Id.* at 444 (quoting *Mississippi Band of*

*Choctaw Indians v. Holyfield,* —— U.S. ——, ——, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989)). However, no claim is made here under the Indian Child Welfare Act. We presume this is because there is no dispute M.A.L. is not a member of nor eligible for enrollment in an Indian tribe. *See* 25 U.S.C. § 1903(4) (1988); Minn.Stat. § 257.351, subd. 6 (1988).

■ The trial court said it believed the best interests of the child to be the appropriate standard. We agree. The trial court considered the applicable law and blended the statutory preferences of ch. 260 in its best interests of the child test. The trial court noted M.A.L. has special needs because of the tragedies 'that have befallen her.

It was important to the trial court that M.A.L. needs stability and a close relationship with adults so she can form bonds necessary to her psychological growth. This is supported by the record. Concerns about M.A.L.'s ability to bond and need for stability were raised by M.A.L.'s pediatrician and both social workers. The trial court also found the Cebulas were more likely to bring emotional closeness than appellant.

The trial court did not base its decision on the fact M.A.L. had bonded already with the Cebulas and they should continue as primary caretakers, although there is support in the record for such a finding. *See Maxfield v. Maxfield,* 452 N.W.2d 219, 223 (Minn.1990) (a young child's bond with a primary caretaker bears on other statutory criteria). Therefore, appellant cannot be heard to complain the Cebulas had an unfair advantage.

We are not blind to the danger of prejudice in favor of finding a white middle-class home to be in the child's best interests even if it shuts the child off from her heritage. We do not view this as such a case, however. The trial court found the Cebulas and appellant to have substantially equal economic resources and home studies showed the homes to be very similar. The trial court found the Cebulas to be committed to keeping M.A.L. connected with her

relatives and her heritage. It found the Cebulas were more interested in M.A.L.'s development, and appellant did not have the same dedication to raising M.A.L. The court provided for ongoing visitation by appellant, but thought the Cebulas would be better custodians. We find the trial court did not abuse its discretion or misapply the law. *Maxfield*, 452 N.W.2d at 221.

Appellant also contends the trial court erred by placing M.A.L. in an unlicensed foster home. Appellant points to Minn.Stat. § 245A.03, subd. 1(2) (1988). That statute requires a license for individuals who "receive a child * * * for care." This argument was not raised in the trial court and is not properly before us. In any event, it seems to us that awarding custody of a child to an individual under Minn.Stat. ch. 518 does not constitute placing the child in foster care.

The undocumented request of the Cebulas for costs and attorney fees is denied.

### DECISION

Under the unusual circumstances of this case, the trial court did not err in its award of custody.

Affirmed.